IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| HILTON WORLDWIDE HOLDINGS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 1:25-cv-2104-LMB-IDD |
| | ) | |
| SAM HIRBOD, FMT SJ HOLDINGS LLC, AND | ) | |
| EAGLE CANYON HOLDINGS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF SAM HIRBOD IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF
CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**

I, Sam Hirbod, declare as follows:

1.      I am the President, Chief Executive Officer, and sole owner of Eagle Canyon Holdings, LLC ("Eagle Canyon"). I am familiar with the information set forth in this declaration based on my personal knowledge and information and documents provided to me. The facts and matters testified to herein are true to the best of my knowledge and belief. I am over the age of 18, and if called as a witness, I could, and would, competently testify thereto.

2.      I submit this declaration in support of Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

3.      I indirectly owned and controlled the entities that owned and operated the hotel located at 170 South Market Street, San Jose, California, now known as the Signia by Hilton San Jose (the "Hotel").

4.      Following its acquisition in 2018, I personally invested extraordinary time, capital, and effort into revitalizing the Hotel, contributing approximately $90 million in equity to the purchase and overseeing a multi-year, $65 million capital improvement program aimed at

transforming the Hotel into a premier convention and business destination, including comprehensive mechanical, technological, and guest-experience upgrades. Those efforts were abruptly undermined by the unprecedented onset of the COVID-19 pandemic, which resulted in mandatory government shutdowns, prolonged bans on group meetings in San Jose, and the complete closure of the Hotel beginning in March 2020, making it the first hotel in the country forced into full lockdown, while eliminating the core revenue streams on which the Hotel depended.

5.      Despite these conditions, I continued to service debt obligations, fund operations, and maintain employee wages and benefits, personally contributing tens of millions of dollars to keep the Hotel afloat during a period when most comparable businesses permanently closed. Ultimately, the prolonged and severe pandemic-related disruptions, combined with government restrictions outside my control, made a balance-sheet restructuring unavoidable.

6.      Following a Chapter 11 restructuring which concluded in or about November 2021, the Hotel was re-flagged under Hilton's Signia brand and became subject to a branding and management agreement with Hilton, together with related subordination, non-disturbance, recognition, guaranty, and reimbursement agreements (collectively, the "Hilton Agreements").

7.      Additional financing was required to facilitate the Hotel's rebranding.  My entities and I ultimately sought a $25 million mezzanine loan from JPMorgan Chase Bank, N.A. ("JPMorgan"), which JPMorgan extended on the condition that if we defaulted on the loan, Hilton would either purchase the mezzanine loan from JPMorgan or pay it off in full.

8.      Plaintiff's Complaint is based on certain of the Hilton Agreements entered into in November 2021 relating to Hilton's guaranty of the mezzanine loan and related reimbursement

2

obligations. Although these agreements are central to Plaintiff's claims, Plaintiff did not attach them to its Complaint.

9.      The master agreement we entered on November 8, 2021 was a 96-page document Branding and Management Agreement ("BAMA") that governs the branding, management, and financing structure of the Hotel and created the relationship between me and my entities, on the one hand, and Plaintiff and its affiliates, on the other.  A true and correct copy of the BAMA is attached hereto as Exhibit A. The BAMA required certain "credit enhancements" that were executed on the same date as the BAMA.  Additionally, such "credit enhancements" were expressly required by our senior secured lender as a condition to our exit financing upon emergence from bankruptcy, without which, Hilton's affiliate would not have been approved by our lender to be the Manager of the Hotel and would not have guaranteed repayment of any loan obligations.

10.      One such "credit enhancement" was a Reimbursement Agreement between FMT SJ Holdings LLC ("FMT") and Hilton, pursuant to which Hilton guaranteed repayment of a mezzanine loan to the lender, FMT agreed to pay Hilton an annual fee for providing that guaranty, and FMT agreed to reimburse and indemnify Hilton for amounts paid by Hilton under the guaranty, together with interest and costs. A true and correct copy of the Reimbursement Agreement between FMT and Hilton is attached hereto as Exhibit B.

11.      In connection with the Reimbursement Agreement, Hilton required additional guarantees to backstop FMT's obligations, including (a) a Reimbursement Guaranty from Eagle Canyon Holdings, LLC, dated November 8, 2021, which is an absolute and unconditional guaranty of FMT's payment and performance obligations under the Reimbursement Agreement, and (b) a Springing Reimbursement Guaranty from me, dated November 8, 2021, which provides that I have

3

no personal liability unless specified "springing recourse events" occur, but upon the occurrence of any such event I become personally liable for the reimbursement obligations owed to Hilton. True and correct copies of the Eagle Canyon Reimbursement Guaranty and the Hirbod Springing Reimbursement Guaranty are attached hereto as Exhibits C and D, respectively.

12.    The BAMA contains a provision requiring mandatory mediation of "any dispute, claim, controversy or issue arising out of or relating to this Agreement or the relationship created by this Agreement." Ex. A [BAMA, ¶ 19.2.1].

13.    By July 2023, we needed additional funding to complete the rebranding of the Hotel.  JPMorgan agreed to increase the mezzanine loan amount by $4.3 million in July 2023 on the condition that Hilton would guarantee the full loan amount of $29.3 million. Hilton agreed to do so on the condition that I provide to Hilton a Personal Guaranty for the additional $4.3 million, which I did. A true and correct copy of the Personal Guaranty executed by me on or about July 9, 2023 is attached hereto as Exhibit E.

14.    The Reimbursement Agreement, Eagle Canyon Reimbursement Guaranty, Hirbod Springing Reimbursement Guaranty, and Hirbod Personal Guaranty all arose from and relate to the BAMA.

15.    As noted above, the BAMA requires the parties to engage in mediation as a mandatory condition precedent before commencing litigation. Hilton did not request or participate in mediation prior to filing this action.

16.    On December 8, 2025, through counsel, Defendants provided Plaintiff with written notice invoking the mandatory mediation provision set forth in Paragraph 19 of the BAMA and advising that Plaintiff's Complaint had been filed without satisfaction of that contractual condition precedent.

17.    On December 10, 2025, Plaintiff's counsel responded to that notice and declined to withdraw the Complaint.

18.    If this action is dismissed on the basis of Hilton's failure to satisfy that contractual condition precedent, I am willing and prepared to participate in mediation with Hilton in good faith and in accordance with the BAMA.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on this 29th day of December, 2025, at San Diego, California.

SAM HIRBOD

5