# Exhibit B

Execution Version

# REIMBURSEMENT AGREEMENT

This REIMBURSEMENT AGREEMENT (this "**Agreement**") is made and entered into as of November 8, 2021 (the "**Effective Date**"), by and between FMT SJ HOLDINGS LLC, a Delaware limited liability company, having an address at 3223 Crow Canyon Road, Suite 300, San Ramon, California 94583 ("**Obligor**") and HILTON WORLDWIDE HOLDINGS, INC., a Delaware corporation, having an address at 7930 Jones Branch Drive, Suite 1100, McLean, Virginia 22012 ("**Hilton**"). The term "**Hilton Party**" or "**Hilton Parties**" means, individually or collectively (as the context requires) Hilton and/or its direct or indirect subsidiaries and affiliates.

## RECITALS

A.    Obligor's wholly owned subsidiary, RDNWD LLC, a Delaware limited liability company ("**Borrower**") is securing mezzanine financing (the "**Mezzanine Loan**") from JPMorgan Chase Bank, National Association ("**Lender**"), in connection with that certain hotel located at 170 South Market Street, San Jose, California (the "**Hotel**") which such Mezzanine Loan is evidenced by one or more promissory notes (individually and/or collectively, as the context may require, and as amended, restated, supplemented or modified from time to time, the "**Note**") and made pursuant to a Mezzanine Loan Agreement, of even date therewith, between Borrower and Lender (as amended, restated, supplemented or otherwise modified from time to time, the "**Loan Agreement**"), on the condition that Obligor execute and deliver to Lender this Agreement.  Unless otherwise defined herein, capitalized terms shall have the meaning set forth in the Loan Agreement.

B.    In connection with the Mezzanine Loan, Hilton is entering into that certain Guaranty of Payment and Performance with Lender dated as of even date herewith (the "**Mezzanine Guaranty**"), pursuant to which, Hilton is liable to Lender for the Guaranteed Obligations (as defined herein), which includes a guaranty by Hilton of the repayment of the Mezzanine Loan to Lender.

C.    Pursuant to the Mezzanine Guaranty, in connection with the paying of the Guaranteed Obligations (as defined herein) in full, Hilton may, at its option, acquire the Mezzanine Loan, and all right, title and interest therein from the Lender.

D.    Lender would not have provided the Mezzanine Loan to Borrower without Hilton providing the Mezzanine Guaranty.

E.    Hilton would not enter into the Mezzanine Guaranty without Obligor agreeing to pay Hilton an annual guaranty fee and to reimburse and indemnify the Hilton Parties for any and all amounts that a Hilton Party may pay out to Lender under the Mezzanine Guaranty.

F.    Obligor will benefit from Lender making the Mezzanine Loan to Borrower, and accordingly, Obligor agrees to pay Hilton an annual guaranty fee and reimburse and indemnify Hilton for any and all amounts that a Hilton Party may pay out to Lender under the Mezzanine Guaranty pursuant to the terms and conditions under this Agreement.

US_Active\118838519\V-8

G.      On or prior to the date hereof Eagle Canyon Holdings, LLC ("**Eagle Canyon Guarantor**") has entered into that certain Guaranty of Reimbursement Obligations, dated on or about the date hereof, in favor of Hilton, together with its successors and assigns, whereby Eagle Canyon Guarantor has agreed to guarantee the payment and performance of Obligor's obligations under this Agreement (the "**Eagle Canyon Reimbursement Guaranty**"), as the same may be amended, restated, supplemented or otherwise modified from time to time in accordance with its terms.

H.      On or prior to the date hereof Sam Hirbod, an individual, has entered into that certain Springing Guaranty of Reimbursement Obligations, dated on or about the date hereof, in favor of Hilton, together with its successors and assigns, whereby Sam Hirbod has agreed to guarantee the payment and performance of Obligor's obligations hereunder upon the occurrence of certain events set forth therein (together with the Eagle Canyon Reimbursement Guaranty collectively, the "**Sponsor Guarantees**"), as the same may be amended, restated, supplemented or otherwise modified from time to time in accordance with its terms.

## AGREEMENTS

NOW, THEREFORE, the parties hereto hereby agree as follows:

1.      Defined Terms.

(a)      "**Default Rate**" shall mean an amount equal to the lesser of (i) eight percent (8%) per annum or (ii) the maximum amount permitted by applicable law.

(b)      "**Deficiency Amount**" means:

(i)      in the case of a foreclosure sale (or foreclosure sales) of the Owner Collateral and/or the Operating Lessee Collateral other than as described in **clauses 1(b)(ii) and 1(b)(iii)** immediately below, the positive difference, if any, between (x) the amount of the Outstanding Guaranteed Obligations (as defined below) and (y) the net proceeds derived from such foreclosure sale (or foreclosure sales);

(ii)      in the case of a foreclosure sale (or foreclosure sales) of the Owner Collateral and/or the Operating Lessee Collateral in which any Hilton Party is the successful bidder for the Owner Collateral and/or the Operating Lessee Collateral by "credit bid" (individually or collectively, a "**Credit Bid**") whereby such Hilton Party bids the amount of the Debt or an amount less than the Debt for the applicable Collateral (a "**Credit Bid Amount**"), if the Credit Bid Amount is lower than the Outstanding Guaranteed Obligations, the positive difference between (x) the amount of the Outstanding Guaranteed Obligations and (y) the Credit Bid Amount; and

2

(iii)   in the case of a Credit Bid, if the Credit Bid Amount is equal to or greater than the Outstanding Guaranteed Obligations, the Deficiency Amount shall be equal to zero.

(c)   "**Guaranteed Obligations**" has the meaning set forth in the Mezzanine Guaranty.

(d)   "**Principal Payment Amounts**" shall mean any amounts paid by Borrower, at any time following Hilton or any Hilton's Party acquisition of the Mezzanine Loan, of the outstanding principal balance of the Mezzanine Loan, pursuant to the terms of the Loan Documents.

(e)   "**Outstanding Guaranteed Obligations**" means, at the time of such determination, (i) the amount tendered by any Hilton Party to Lender pursuant to the terms of the Mezzanine Guaranty in satisfaction in full of the Guaranteed Obligations and/or in order to complete the purchase of the Mezzanine Loan, _less_ (ii) any Principal Payment Amounts made to the applicable Hilton Party (as mezzanine lender) after such Hilton Party has purchased the Mezzanine Loan pursuant to the terms of the Mezzanine Guaranty.

(f)   "**Reimbursement Amounts**" means the sum of:

(i)   as applicable:

(A)   *at any time prior to a Hilton Party's purchase of the Mezzanine Loan*, the amount tendered by any Hilton Party to Lender pursuant to the terms of the Mezzanine Guaranty in satisfaction in full of the Guaranteed Obligations,

or

(B)   *at any time following a Hilton Party's purchase of the Mezzanine Loan (but where such party has not foreclosed on the Owner Collateral and/or Operating Lessee Collateral)*, the Outstanding Guaranteed Obligations,

or

(C)   *at any time following a Hilton Party's purchase of the Mezzanine Loan (and subsequent foreclosure of the Owner Collateral and/or the Operating Lessee Collateral)*, the Deficiency Amount;

_plus_

3

(ii)     interest on the amount of the preceding **clause 1(f)(i)** at the Default Rate to accrue from and after the date of written demand for payment thereof until the payment of such amount in full; and

*plus*

(iii)    all actual, out-of-pocket costs and expenses relating to the payment of the Guaranteed Obligations, any Cure Costs and all actual, out-of-pocket costs and expanses of any collection, other realization or enforcement under this Agreement, including, without limitation, reasonable attorneys' fees.

For the avoidance of doubt, if a Hilton Party purchases the Mezzanine Loan and subsequently forecloses on the Owner Collateral and/or the Operating Lessee Collateral and the Deficiency Amount is equal to zero, except for Reimbursement Amounts under the preceding **clause 1(f)(iii)**., there shall be no other Reimbursement Amounts and Obligor shall have no other liability under this Agreement whatsoever.

2.      <u>Annual Guaranty Fee</u>. In consideration of Hilton providing the Mezzanine Guaranty, Obligor hereby agrees to pay to Hilton an annual guaranty fee equal to one-half percent (0.5%) of the then-current outstanding principal balance of the Mezzanine Loan (the "**Annual Guaranty Fee**"), payable on the first anniversary of the Effective Date, and each anniversary of the Effective Date thereafter, until the Mezzanine Guaranty is terminated. If applicable, the payment of the Annual Guaranty Fee and the provisions of this Section 2 shall survive termination of this Agreement.

3.      <u>Reimbursement Obligation</u>.   Obligor hereby agrees to fully and promptly reimburse the Hilton Parties in United States Dollars for any and all Reimbursement Amounts (the "**Reimbursement Obligation**"). If Hilton is called upon to pay and a Hilton Party actually does pay any Reimbursement Amounts, then Obligor hereby absolutely, irrevocably and unconditionally agrees to reimburse the Hilton Parties upon demand for any such amounts.

4.      <u>Remedies</u>. In the event that Obligor fails to pay Hilton the Annual Guaranty Fee, or reimburse the Hilton Parties as required hereunder following written demand therefor, Hilton may exercise any right or remedy available to it at law or in equity, including the right to sue for specific performance hereof.

5.      <u>Mezzanine Loan Purchase</u>.  Obligor hereby acknowledges and agrees that:

(a)      following a Mezzanine Loan default, Hilton shall have the right, but not the obligation, to purchase (or cause another Hilton Party to purchase) the Mezzanine Loan in accordance with the terms of the Mezzanine Guaranty, in which case the applicable Hilton Party shall have all of the right, title and interest of the Lender under the Loan Documents (the "**Mezzanine Loan Purchase Right**");

(b)      except as expressly set forth herein, neither Hilton's exercise of the Mezzanine Loan Purchase Rights nor its actions or omission as "Lender" under the Loan Documents, including without limitation, the receipt by Lender of any payments made by

4

Borrower under the Loan Documents, shall in any way create any right of offset, impair, reduce, act as a waiver or extinguish the Reimbursement Obligation;

(c)      the exercise by any Hilton Party of any right or remedy hereunder or under any other instrument, including without limitation the Loan Documents or the Sponsor Guarantees, or at law or in equity shall not preclude the concurrent or subsequent exercise of any other instrument or remedy at law or in equity and shall not preclude the concurrent or subsequent exercise of any other right or remedy; and

(d)      it shall not be necessary for any Hilton Party (and Obligor hereby waives any rights which Obligor may have to so require), in order to enforce such payment or performance by Obligor, first to institute suit or exhaust its remedies against Borrower, any guarantor, or others liable to pay or perform the Reimbursement Obligations, or to enforce their rights against any security which shall ever have been given to secure the Reimbursement Obligations, including, without limitation, the Collateral.  Except to the extent required by applicable law, Hilton shall not be required to mitigate damages or take any other action to reduce, collect or enforce the Reimbursement Obligations.

6.      <u>Additional Covenants and Obligations</u>. Obligor further covenants and agrees to the following:

(a) <u>Notice of Default under Mezzanine Loan</u>. Obligor shall provide Hilton with a copy of any notice of default received or issued under or in connection with the Mezzanine Loan, within one (1) Business Day of receipt or delivery.

(b) <u>No Amendments, Modifications or Changes to Mezzanine Loan</u>. Obligor shall not agree to, or make any, changes, modifications or amendments to the Mezzanine Loan or any documents or agreements related thereto, without the prior written consent of Hilton, excluding any non-substantive, ministerial changes or revisions to such documents or agreements.

(c) <u>Application of Reserve Funds</u>.  Obligor shall provide Hilton a notice of the release of any Interest Shortfall Reserve Funds to the Mortgage Borrower (as defined in the Mortgage Loan Agreement) or to Borrower or to any of their affiliates. Notwithstanding anything in the Loan Documents or Mortgage Loan Documents to the contrary, in the event any Interest Shortfall Reserve Funds (as defined in the Mortgage Loan Agreement) are released to Borrower, Borrower shall be required to prepay the Mezzanine Loan, within one (1) Business Day of its receipt of such Interest Shortfall Reserve Funds, in the amount so released to Borrower.

(d) <u>Discussion with Lender</u>.  Hilton shall have the right at any time to discuss the Hotel, Property, the Mezzanine Loan, the Mortgage Loan, the Collateral, or any other matter directly with Lender and/or Mortgage Lender and their consultants, agents or representatives without notice to or permission from Obligor, Borrower, Mortgage Borrower, Eagle Canyon Guarantor, Sam Hirbod or any other Person, nor shall Hilton have any obligation to disclose such discussions or the contents thereof with Obligor, Borrower, Mortgage Borrower, Eagle Canyon Guarantor, Sam Hirbod or any other Person.

5

(e) <u>Mortgage Loan Defaults</u>.  Without waiving or releasing Obligor from any of its obligations hereunder, if there shall occur any default under any of the Mortgage Loan Documents or if Mortgage Lender asserts that Mortgage Borrower has defaulted in the performance or observance of any term, covenant or condition of the Mortgage Loan Documents (whether or not the same shall have continued beyond any applicable notice or grace periods, whether or not Mortgage Lender shall have delivered proper notice to Mortgage Borrower, and without regard to any other defenses or offset rights Mortgage Borrower may have against Mortgage Lender), Obligor hereby expressly agrees that Hilton shall have the immediate right, without notice to or demand on Obligor or Mortgage Borrower, but shall be under no obligation, to: (i) pay all or any part of the Mortgage Loan and any other sums that are then due and payable, and to perform any act or take any action on behalf of Mortgage Borrower to cause all of the terms, covenants and conditions of the applicable Mortgage Loan Document on the part of Mortgage Borrower to be performed or observed thereunder to be promptly performed or observed; and (ii) pay any other amounts and take any other action as Hilton, in its sole and absolute discretion, shall deem advisable to protect or preserve the rights and interests of Mezzanine Loan and/or the Collateral. Hilton shall have no obligation to complete any cure or attempted cure undertaken or commenced by Hilton.  All sums so paid and the costs and expenses incurred by Hilton in exercising rights hereunder (such costs and expenses, "**Cure Costs**") shall be added to the constitute Reimbursement Amounts and shall be paid pursuant to the terms hereof.  Obligor hereby grants, and shall cause Mortgage Borrower to grant, Hilton and any Person designated by Hilton the right to enter upon the Property at any time for the purpose of carrying out the rights granted to Hilton under this Section 6(e).  Obligor shall not, and shall not cause or permit Mortgage Borrower or any other Person to impede, interfere with, hinder or delay, any effort or action on the part of Hilton to cure any default or asserted default under the Mortgage Loan, or to otherwise protect or preserve the Mezzanine Loan and the Collateral, including the Property.  Obligor hereby indemnifies Lender from and against all liabilities, obligations, losses, damages, penalties, assessments, actions, or causes of action, judgments, suits, claims, demands, costs, expenses (including, without limitation, reasonable attorneys' and other professional fees, whether or not suit is brought, and settlement costs), and disbursements of any kind or nature whatsoever which may be imposed on, incurred by or asserted against Hilton as a result of the foregoing actions.  Hilton shall have no obligation to Obligor, Borrower, Mortgage Borrower or any other party to make any such payment or performance.

(f) <u>Reporting Requirements</u>.  Obligor shall provide Hilton with a copy of any reports, financial statements or other similar reporting information that Borrower or Mortgage Borrower is required to provide to Lender or Mortgage Lender under the Mezzanine Loan or Mortgage Loan, as applicable, including without limitation, any reports required under Section 5.1.11 of the Loan Agreement and Section 5.1.11 of the Mortgage Loan Agreement.

7.      <u>Obligor Representations and Warranties</u>. Obligor represents and warrants to Hilton that (a) Obligor has full power, authority and legal right to execute this Agreement and to perform all its obligations under this Agreement, and (b) as of the date of this Agreement, Obligor is solvent (as such term is used in applicable bankruptcy, liquidation, receivership, insolvency or similar laws).  Obligor further acknowledges and confirms that the consideration

6

and benefits Obligor will receive as a result of the Mezzanine Loan, Mezzanine Guaranty and this Agreement are substantial and constitute fair and reasonably equivalent value in exchange for the Obligor's obligations hereunder.

8.      Termination.   Upon the indefeasible payment in full of the Reimbursement Amounts in cash and the performance in full of the Reimbursement Obligations, this Agreement shall terminate and be of no further force and effect.  The Reimbursement Obligations shall not be considered indefeasibly paid for purposes of this Agreement unless and until all payments to Hilton are no longer subject to any right on the part of any person or entity, including Obligor and Eagle Canyon Guarantor, Obligor or Eagle Canyon Guarantor as a debtor in possession, or any trustee (whether appointed under the Bankruptcy Code or otherwise) of any of Obligor's or Eagle Canyon Guarantor's assets to invalidate or set aside such payments or to seek to recoup the amount of such payments or any portion thereof, or to declare such payments to be fraudulent or preferential.  Upon such full and final performance and indefeasible payment of the Reimbursement Obligations whether by Obligor or Eagle Canyon Guarantor, this Agreement shall terminate and be of no further force and effect.  In the event that, for any reason, any portion of such payments of the Reimbursement Obligations to Hilton is set aside or restored, whether voluntarily or involuntarily, after the making thereof, then the obligation intended to be satisfied thereby shall be revived and continued in full force and effect as if said payment or payments had not been made, and Obligor shall be liable for the full amount Hilton is required to repay plus any and all costs and expenses (including attorneys' fees and expenses incurred pursuant to proceedings arising under the Bankruptcy Code) paid by Hilton in connection therewith.

9.      Transfers.   Obligor shall not and shall not permit the sale, conveyance, assignment, or transfer or disposition of (directly or indirectly, voluntarily or involuntarily, by operation of law or otherwise, and whether or not for consideration or of record) of the Property, the Collateral or any part thereof or any legal or beneficial interest therein, including, without limitation, pursuant to any sale of the equity interest of any direct or indirect beneficial owner of the Property or the Collateral (each a "**Transfer**"), which, after giving effect to such Transfer would result in Sam Hirbod owning less than a majority interest in the Property, Collateral, Eagle Canyon Guarantor and/or Obligor and no longer controlling the Borrower, Owner, Obligor,  Eagle Canyon Guarantor and/or the Property, unless the same results in a simultaneous repayment in full of the Mezzanine Loan.

10.     Governing Law. This Agreement shall be governed, construed and interpreted as to validity, enforcement and in all other respects, in accordance with the laws of the State of New York pursuant to Section 5-1401 of the New York General Obligations Law.

11.     Jurisdiction. Obligor and Hilton each covenant and agree (a) that the Supreme Court of the State of New York for the County of New York, or, in a case involving diversity of citizenship, the United States District Court for the Eastern District of Virginia (or, if none of the courts listed here has subject matter jurisdiction, a court of competent jurisdiction in the county and state where the Hotel is located), shall have exclusive jurisdiction of any such action or proceeding, and (b) that service of any summons and complaint or other process in any such action or proceeding may be made by registered or certified mail directed to such party at such

US_Active\118838519\V-8

party's address set forth above (or such other address of which such party has notified the other in writing), such party waiving personal service thereof.

12.    <u>Entire Agreement</u>. This Agreement may not be modified or amended except by in writing executed and delivered by the parties hereto, and constitutes the entire agreement of the parties hereto with respect to the subject matter hereof, incorporates all prior negotiations and understandings with respect to such subject matter and may be amended solely by an instrument in writing executed by all of the parties.

13.    <u>Counterparts</u>. This Agreement may be executed in multiple counterparts, each of which shall be an original but all of which together shall constitute but one and the same agreement.

14.    <u>WAIVER OF JURY</u>. EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY RELATING TO THIS AGREEMENT WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY. EACH PARTY HERETO (A) CERTIFIES THAT NO AGENT, ATTORNEY, REPRESENTATIVE OR ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT SEEK TO ENFORCE THE FOREGOING WAIVER IN THE EVENT OF LITIGATION, AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

15.    <u>Successors and Assigns</u>.  Each reference herein to Hilton shall be deemed to include its successors and assigns, to whose favor the provisions of this Agreement shall also inure.  Each reference herein to Obligor shall be deemed to include the heirs, executors, administrators, legal representatives, successors and assigns of Obligor, all of whom shall be bound by the provisions of this Agreement. Obligor may not assign its rights or obligations under this Agreement without the prior written consent of Hilton.  Hilton may without notice to Obligor and without affecting any Obligor's obligations hereunder assign or sell its rights and interests under this Agreement.

16.    <u>Third Parties Not Benefited</u>. Nothing in this Agreement shall confer any rights or remedies under or by reason of this Agreement on any person or entity other than the parties and their respective successors and assigns, nor shall anything in this Agreement relieve or discharge the obligation or liability of any third person to any party to this Agreement, nor shall any provision of this Agreement give any third person any right of subrogation or action over or against any party to this Agreement.  Notwithstanding the foregoing, each Hilton Party is an express third party beneficiary as contemplated by this Agreement.

17.    <u>Attorneys' Fees</u>. If any action is brought hereunder or to enforce rights hereunder, the prevailing party(ies) shall be entitled to recover its attorneys' fees and costs from the other party(ies).

US_Active\118838519\V-8

18.     <u>Recitals</u>.  The recital and introductory paragraphs hereof are a part hereof, form a basis for this Agreement and shall be considered prima facie evidence of the facts and documents referred to therein.

19.     <u>Manager Rights</u>.  The parties hereto acknowledge and agree that, (i) the actions taken by any Hilton Party hereunder or, from and after the date any Hilton Party acquires the Mezzanine Loan, under the Loan Documents, are independent from the actions taken by Manager under the Management Agreement, (ii) that the actions taken by Manager in connection with the Management Agreement are independent from the actions taken by any Hilton Party hereunder or, from and after the date any Hilton Party acquires the Mezzanine Loan, under the Loan Documents, (iii) no action by any Hilton Party will be imputed to Manager under the Management Agreement, and vice versa, and (iv) nothing herein shall constitute a waiver or release or otherwise affect or impact any rights of Manager under the Management Agreement or Lender under the Loan Documents.

[*Remainder of page left blank*]

9

US_Active\118838519\V-8

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

OBLIGOR:

FMT SJ HOLDINGS LLC,
a Delaware limited liability company

By: _____

Name: Sam Hirbod

Its:    President and Chief Executive Officer

[Signatures continue on next page]

[Signature Page to Reimbursement Agreement]

**HILTON**:

HILTON WORLDWIDE HOLDINGS INC.,
a Delaware corporation

By: _____
Name: Michael Hollman
Its:     Authorized Signatory