# Exhibit E

Miami, Florida
July 9, 2023

**PERSONAL GUARANTY**

**THIS PERSONAL GUARANTY** (this "**Guaranty**") is made by Sam Hirbod, an individual, having an address at 340 South East 3rd Street, 3402, Miami FL 33131 ("**Guarantor**"), in favor of HILTON WORLDWIDE HOLDINGS, INC., a Delaware corporation, having an address at 7930 Jones Branch Drive, Suite 1100, McLean, VA 22102 (together with all of its direct or indirect subsidiaries and affiliates and all of its and their successors and assigns, "**Hilton**").

RECITALS

A.      RDNWD LLC, a Delaware limited liability company ("**Borrower**") secured mezzanine financing from JPMorgan Chase Bank, National Association ("**Lender**") in connection with that certain hotel located at 170 South Market Street, San Jose, California (the "**Hotel**"), pursuant to that certain Mezzanine Loan Agreement, dated as of November 8, 2021, as amended by that certain First Omnibus Amendment to and Reaffirmation of Mezzanine Loan Documents, dated as of February 9, 2023, by and among Borrower, Lender and the other parties listed therein, and that certain Second Omnibus Amendment to and Reaffirmation of Mezzanine Loan Documents, dated as of June 9, 2023, by and among Borrower, Lender and the other parties listed therein (as amended, restated, supplemented, reaffirmed or otherwise modified from time to time, the **"Original Mezzanine Loan Agreement"**), in the principal amount of $25,000,000.00 (the "**Mezzanine Loan**").

B.      In connection with the Mezzanine Loan, Hilton entered into that certain Guaranty of Payment and Performance with Lender dated as of November 8, 2021, pursuant to which, Hilton is liable to Lender for the Guaranteed Obligations (as defined therein), which includes a guaranty by Hilton of the repayment of the Mezzanine Loan to Lender (as amended, restated, supplemented, reaffirmed or otherwise modified from time to time, the "**Mezzanine Guaranty**").

C.      In consideration of Hilton executing the Mezzanine Guaranty, FMT SJ Holdings LLC, a Delaware limited liability company, having an address at 3223 Crow Canyon Road, Suite 300, San Ramon, California 94583 ("**Obligor**") entered into that certain Reimbursement Agreement, dated as of November 8, 2021, with Hilton, pursuant to which Obligor agreed to pay Hilton an annual guaranty fee and reimburse and indemnify Hilton for any and all amounts that Hilton pays out to Lender under the Mezzanine Guaranty (as amended, restated, supplemented, reaffirmed or otherwise modified from time to time, the "**Reimbursement Agreement**"). All capitalized words and phrases not otherwise defined herein shall have the meanings ascribed to them in the Reimbursement Agreement.

D.      In connection with the Reimbursement Agreement, and in consideration of Hilton executing the Mezzanine Guaranty, (i) Eagle Canyon Holdings, LLC, a Delaware limited liability company having an address at 3223 Crow Canyon Road, Suite 300, San Ramon, California 94583, as "Guarantor" (together with its successors and assigns, "**EC Guarantor**") entered into that certain Guaranty of Reimbursement Agreement Obligations, dated as of November 8, 2021, in favor of Hilton, pursuant to which EC Guarantor is liable to Hilton for the Guaranteed Obligation (as defined therein) (as amended, restated, supplemented, reaffirmed or otherwise modified and/or assigned from time to time, the "**EC Guaranty**"), and (ii) Guarantor entered into that certain Springing Guaranty, dated as of November 8, 2021, in favor of Hilton, pursuant to which Guarantor is liable to Hilton for the Guaranteed Obligation (as

US_ACTIVE\124065075\V-3

defined therein) upon the occurrence of a Springing Recourse Event (as defined therein) (as amended, restated, supplemented, reaffirmed or otherwise modified and/or assigned from time to time, the "**Springing Guaranty**", and together with the EC Guaranty, the "**Existing Guaranties**").

E.      Concurrently herewith, Borrower and Lender and certain other parties are entering into that certain Third Omnibus Amendment to and Reaffirmation of Mezzanine Loan Agreement, dated as of the date hereof (the "**Mezzanine Omnibus Amendment**"), pursuant to which Lender has agreed to increase the principal amount of the Mezzanine Loan by $4,300,000.00 from $25,000,000.00 to $29,300,000.00, for the benefit of Borrower (the "**Upsized Loan**").

F.      In connection with the Mezzanine Omnibus Amendment, and contemporaneously herewith, Hilton reaffirmed the Mezzanine Guaranty in favor of Lender with respect to the Upsized Loan, pursuant to that certain Mezzanine Loan Reaffirmation Agreement (the "**Hilton Reaffirmation**").

G.      In connection with the Mezzanine Omnibus Amendment, and in consideration of the Hilton Reaffirmation, and contemporaneously herewith, Obligor, EC Guarantor and Guarantor are reaffirming the Reimbursement Agreement, the EC Guaranty and the Springing Guaranty, respectively, pursuant to that certain Reaffirmation of Reimbursement Agreement, Reaffirmation of Guaranty of Reimbursement Agreement and Reaffirmation of Springing Guarantor, respectively, in favor of Hilton with respect to the Upsized Loan (collectively, the "**Borrower Reaffirmations**").

H.      Hilton has required that Guarantor execute and deliver this Guaranty in consideration of Hilton executing the Hilton Reaffirmation.

I.      Guarantor indirectly owns certain of the beneficial interests in Borrower and Obligor, and thus will derive substantial benefit from the Upsized Loan, which would not have been made without the Hilton Reaffirmation, which would not have been provided without the Borrower Reaffirmations and this Guaranty.  Guarantor hereby acknowledges and agrees that this Guaranty constitutes a guaranty issued in connection with the execution of the Hilton Reaffirmation, and Guarantor enters into this Guaranty to induce Hilton to execute the Hilton Reaffirmation.

J.      As used in this Guaranty, the term "**Obligor Party**" means, individually and/or collectively as the context may require, Obligor and/or EC Guarantor.

AGREEMENT

1.      **Guaranty**.

(a)      Guarantor hereby absolutely, irrevocably and unconditionally guarantees to Hilton and its successors and assigns the prompt, unconditional, and complete performance of the Guaranteed Obligation.  Guarantor hereby irrevocably and unconditionally covenants and agrees that it is fully and personally liable for the Guaranteed Obligation as a primary obligor as set forth herein.

(b)      The "**Guaranteed Obligation**" means, collectively, the following: (i) payment and performance of all obligations of the "Obligor" under the Reimbursement Agreement (including, without limitation, all "Reimbursement Amounts" under the Reimbursement Agreement), and (ii) payment or repayment to Hilton of any and all losses, damages, costs or expenses incurred by Hilton or any Hilton Party in connection with any breach by

2

Obligor of its obligations under the Reimbursement Agreement or in connection with Hilton or any Hilton Party exercising and consummating its Mezzanine Loan Purchase Right; provided, however, that Guarantor's aggregate liability for the Guaranteed Obligation under this Guaranty shall not exceed the Guaranty Cap.

(c)     The "**Guaranty Cap**" means the greater of:

(i)     the sum of (A) Four Million Three Hundred Thousand Dollars ($4,300,000.00), plus (B) interest on such amount at the Default Rate to accrue from and after the date of written demand under the Reimbursement Agreement for payment thereof until the payment of such amount in full, plus (C) all of Hilton's actual, out-of-pocket costs and expenses of any collection, other realization or enforcement under this Guaranty, including, without limitation, reasonable attorneys' fees, and

(ii)    all Reimbursement Amounts that Hilton would not have incurred but for the Upsized Loan transaction and the Hilton Reaffirmation.

2.      **Nature of Guaranty**.  It is expressly understood and agreed that this is a continuing guaranty and that the obligations of Guarantor hereunder are and shall be absolute and unconditional under any and all circumstances.  This is a guaranty of payment and performance and not of collection and upon any failure of an Obligor Party to fulfill the Guaranteed Obligation, Hilton may, at its option, proceed directly and at once, without notice, against Guarantor to collect and recover the full amount of the Guaranteed Obligation hereunder or any portion thereof, without proceeding against Obligor Party or any other person.  Guarantor hereby waives the pleading of any statute of limitations as a defense to the obligation hereunder. This Guaranty is separate, distinct and in addition to any liability and/or obligations that Guarantor may have under any other guaranty or indemnity executed by Guarantor in connection with the Hotel (including, without limitation, the Springing Guaranty), and no other agreement, guaranty or indemnity executed in connection with the Hotel shall act to reduce or set off any of Guarantor's liability hereunder. Furthermore, this Guaranty shall not impact, limit or restrict the effectiveness of any of the Existing Guaranties.

3.      **Subordination; Payments Held in Trust**.  Any indebtedness of an Obligor Party to Guarantor now or hereafter existing (including, but not limited to, any rights to subrogation Guarantor may have as a result of any payment by Guarantor under this Guaranty), together with any interest thereon (collectively, "**Guarantor Claims**"), shall be, and such indebtedness is, hereby deferred, postponed and subordinated to the prior payment in full of the Guaranteed Obligation.  Until payment in full of the Guaranteed Obligation or the termination or release of this Guaranty, Guarantor agrees not to accept any payment or satisfaction of any kind of Guarantor Claims and hereby assigns such Guarantor Claims to Hilton, including the right to file proof of claim and to vote thereon in connection with any such proceeding under the bankruptcy code, including the right to vote on any plan of reorganization. In the event that, notwithstanding anything to the contrary in this Guaranty, Guarantor should receive any funds, payment, claim or distribution which is prohibited by this Guaranty, Guarantor agrees to hold in trust for Hilton an amount equal to the amount of all funds, payments, claims or distributions so received in violation of this Guaranty, and agrees that it shall have absolutely no dominion over the amount of such funds, payments, claims or distributions so received except to pay them promptly to Hilton, and Guarantor covenants promptly to pay the same to Hilton to the extent of any unpaid Guaranteed Obligation.

3

4.  **Claims in Guarantor Bankruptcy**.  In the event of receivership, bankruptcy, reorganization, arrangement, debtor's relief, or other insolvency proceedings involving Guarantor as debtor, Hilton shall have the right to prove its claim in any such proceeding so as to establish its rights hereunder and receive directly from the receiver, trustee or other court custodian dividends and payments which would otherwise be payable upon Guarantor Claims.  Guarantor hereby assigns such dividends and payments to Hilton.  Should Hilton receive, for application upon the Guaranteed Obligation, any such dividend or payment which is otherwise payable to Guarantor, and which, as between an Obligor Party and Guarantor, shall constitute a credit upon the Guarantor Claims, then upon payment to Hilton in full of the Guaranteed Obligation, Guarantor shall become subrogated to the rights of Hilton to the extent that such payments to Hilton on the Guarantor Claims have contributed toward the liquidation of the Guaranteed Obligation, and such subrogation shall be with respect to that proportion of the Guaranteed Obligation which would have been unpaid if Hilton had not received dividends or payments upon the Guarantor Claims.

5.  **Payment of Expenses**. Guarantor agrees that, with or without notice or demand, Guarantor will reimburse Hilton for all reasonable out-of-pocket expenses (including counsel fees and disbursements of outside counsel) incurred by Hilton in connection with the collection of the Guaranteed Obligation or any portion thereof, or with the enforcement of this Guaranty.  It is expressly agreed that any such reimbursements paid by Guarantor pursuant to this paragraph are separate and distinct from the Guaranteed Obligation and shall not reduce Guarantor's obligations with respect to the Guaranteed Obligation.

6.  **Application of Payments**. All moneys available to Hilton for application in payment or reduction of the Guaranteed Obligation may be applied by Hilton in such manner and in such amounts and at such time or times and in such order and priority as Hilton may see fit to the payment or reduction of such portion of the Guaranteed Obligation as Hilton may elect.

7.  **Validity Not Affected**.  Guarantor further agrees that the validity of this Guaranty and the obligations of Guarantor hereunder shall in no way be discharged, terminated, affected or impaired (a) by reason of the assertion by Hilton of any rights or remedies which it may have under or with respect to the Reimbursement Agreement, or (b) by reason of any failure to file or record any of such instruments or to take or perfect any security intended to be provided thereby, or (c) by reason of Hilton's failure to exercise, or delay in exercising, any such right or remedy or any right or remedy Hilton may have hereunder or in respect to this Guaranty, or (d) by reason of the commencement of a case under the bankruptcy code by or against an Obligor Party, or the death of any Guarantor, or (e) the taking or accepting of any other security, collateral or guaranty, or other assurance of payment, for all or any part of the Guaranteed Obligation, or (f) or the reorganization, merger or consolidation of an Obligor Party into or with any other corporation or entity, or (g) a change in ownership of or title to the Hotel or an assignment of an Obligor Party's interest in the Reimbursement Agreement (voluntarily, by operation of law or otherwise) or the Guarantor ceasing to hold any beneficial interest in an Obligor Party, or (h) by any change in the time, place or manner of payment of, or in any other term of, the Guaranteed Obligation, or (i) by any change, restructuring or termination of the corporate structure, ownership or existence of an Obligor Party or Hilton, or (j) the invalidity, illegality or unenforceability of all or any part of the Guaranteed Obligation, or any document or agreement executed in connection with or evidencing the Guaranteed Obligation (including the Reimbursement Agreement), or (k) ) any exercise by Hilton or a Hilton Party of any of its remedies or rights under the Reimbursement Agreement (including, without limitation, the Mezzanine Loan Purchase Right) or the Mezzanine Guaranty or

DocuSign Envelope ID: 3CD8A8DB-B79B-4B98-9D5F-B9E5526C3421

any other similar actions taken by Hilton or a Hilton Party in connection therewith, (l) any exercise by Hilton or a Hilton Party of any of its remedies or rights under any other guaranty or similar agreement with Guarantor (including, without limitation, the Springing Guaranty), (m) the lack of an original, notarized "wet ink" signature to this Guaranty (so long as this Guaranty is otherwise executed in accordance with Section 17 below), or (n) any other circumstance which might otherwise constitute a defense available to, or a discharge of, any Obligor Party or Guarantor.

8. **Effect of Bankruptcy**.  In the event that, pursuant to any insolvency, bankruptcy, reorganization, receivership or other debtor relief law, or any judgment, order or decision thereunder, Hilton must rescind or restore any payment, or any part thereof, received by Hilton in satisfaction of the Guaranteed Obligation, as set forth herein, any prior release or discharge from the terms of this Guaranty given to Guarantor by Hilton shall be without effect, Guarantor's obligations hereunder with respect to such payment shall be reinstated as though such payment has been due but not made at such time, and this Guaranty shall remain in full force and effect.  It is the intention of Obligor Party and Guarantor that Guarantor's obligations hereunder shall not be discharged except as set forth herein or by Guarantor's payment and performance of such obligations and then only to the extent of such payment and performance.  Furthermore, and notwithstanding anything to the contrary in this Guaranty or the Reimbursement Agreement, Hilton shall not be deemed to have waived any right which Hilton may have under Section 506(a), 506(b), 1111(b) or any other provisions of the Bankruptcy Code to file a claim for the full amount of the Guaranteed Obligation (and other amounts due to Hilton under the Reimbursement Agreement).  It is further understood that if any Obligor Party shall have taken advantage of, or be subject to the protection of, any provision in the Bankruptcy Code, the effect of which is to prevent or delay Hilton from taking any remedial action against such Obligor Party, the Guaranteed Obligation shall become due and payable and Hilton may, as against Guarantor, nevertheless, declare the Guaranteed Obligation due and payable and enforce any or all of its rights and remedies against Guarantor provided for herein.

9. **Modification of Reimbursement Agreement**. Guarantor further covenants that this Guaranty shall remain and continue in full force and effect as to any modification, extension or renewal of the Reimbursement Agreement, and that other indulgences or forbearance may be granted under any or all of such documents, all of which may be made, done or suffered without notice to, or further consent of, Guarantor.

10. **Waivers**.  Guarantor waives (a) notice of the acceptance hereof, presentment, demand for payment, protest, notice of protest, or any and all notice of non-payment, non-performance or non-observance, or other proof, or notice or demand, whereby to charge Guarantor therefor; (b) any right to revoke this Guaranty with respect to the Guaranteed Obligation; (c) any defense arising by reason of any disability or other defense of an Obligor Party or the cessation from any cause whatsoever (including any act or omission of Hilton) of the liability of an Obligor Party (other than payment); (d) any defense based on any claim that Guarantor's obligations exceed or are more burdensome than those of the Obligor Party, or any claim that the obligations of the Obligor Party are unenforceable or invalid or are otherwise not effective for any reason, including as a result of a failure of a condition precedent to the effectiveness of the Reimbursement Agreement or  a termination, expiration, voiding, nullification, unwinding or any other similar undoing of any of the Reimbursement Agreement for any reason, including any appeal, unwinding or reversing of a Chapter 11 plan whether before or after court approval of such Chapter 11 plan; (e) any right to require Hilton to proceed against an Obligor Party, proceed against or exhaust any security for

5

the Guaranteed Obligation, or pursue any other remedy in Hilton's power whatsoever; (f) any benefit of and any right to participate in any security now or hereafter held by Hilton; and (g) to the fullest extent permitted by law, any other circumstance or any existence of or reliance on any representation by Hilton that might vary the risk of Guarantor or otherwise operate as a defense, any and all other defenses or benefits that may be derived from or afforded by applicable law limiting the liability of or exonerating guarantors or sureties (other than payment). Guarantor expressly waives all setoffs and counterclaims with respect to the Guaranteed Obligation, and all notices of acceptance of this Guaranty or of the existence, creation or incurrence of new or additional Guaranteed Obligations.

11. **Guarantor Representations and Warranties**. Guarantor represents and warrants to Hilton that (a) Guarantor has full power, authority and legal right to execute this Guaranty and to perform all its obligations under this Guaranty, and (b) as of the date of this Guaranty, Guarantor is solvent (as such term is used in applicable bankruptcy, liquidation, receivership, insolvency or similar laws).  Guarantor further acknowledges and confirms that the consideration and benefits Guarantor will receive as a result of the Reimbursement Agreement, the Hilton Reaffirmation and this Guaranty are substantial and constitute fair and reasonably equivalent value in exchange for the Guarantor's obligations hereunder.

12. **Waiver of Right to Trial By Jury**. EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY RELATING TO THIS GUARANTY WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY. EACH PARTY HERETO (A) CERTIFIES THAT NO AGENT, ATTORNEY, REPRESENTATIVE OR ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT SEEK TO ENFORCE THE FOREGOING WAIVER IN THE EVENT OF LITIGATION, AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS GUARANTY BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

13. **Jurisdiction**.  Guarantor and Hilton (by its acceptance hereof) each covenant and agree (a) that the Circuit Court for Fairfax County, Virginia or the Supreme Court of the State of New York for the County of New York, or, in a case involving diversity of citizenship, the United States District Court for the Eastern District of Virginia (or, if none of the courts listed here has subject matter jurisdiction, a court of competent jurisdiction in the county and state where the Hotel is located), shall have exclusive jurisdiction of any such action or proceeding, and (b) that service of any summons and complaint or other process in any such action or proceeding may be made by registered or certified mail directed to such party at such party's address set forth above (or such other address of which such party has notified the other in writing), such party waiving personal service thereof.

14. **Successors and Assigns**.  Each reference herein to Hilton shall be deemed to include its successors and assigns, to whose favor the provisions of this Guaranty shall also inure.  Each reference herein to Guarantor shall be deemed to include the heirs, executors, administrators, legal representatives, successors and assigns of Guarantor, all of whom shall be bound by the provisions of this Guaranty. Guarantor may not assign its rights or obligations under this Guaranty without the prior written consent of Hilton.  Hilton may without notice to Guarantor and without affecting any Guarantor's obligations hereunder assign or sell its rights and interests under this Guaranty.

US_ACTIVE\124065075\V-3

15.    **If Guarantor is a Partnership**.  If any party hereto shall be a partnership, the agreements and obligations on the part of Guarantor herein contained shall remain in force and application notwithstanding any changes in the individuals composing the partnership and the term "Guarantor" shall include any altered or successive partnerships but the predecessor partnerships and their partners shall not thereby be released from any obligations or liability hereunder.

16.    **Entire Agreement**.  All understandings, representations and agreements heretofore had with respect to this Guaranty are merged into this Guaranty which alone fully and completely expresses the agreement of Guarantor and Hilton.

17.    **Duplicate Originals, Counterparts; Electronic Copies**.  This Guaranty may be executed in any number of duplicate originals and each duplicate original will be deemed to be an original.  This Guaranty may be executed in one or more counterparts by some or all of the parties hereto, each of which counterparts shall be an original and all of which together shall constitute a single agreement of Guaranty.  The failure of any party hereto to execute this Guaranty, or any counterpart hereof, shall not relieve the other signatories from their obligations hereunder.  Electronic copies of this Guaranty and signatures thereon (including by PDF and or document signature service such as DocuSign or any other electronic means that reproduces an image of the actual executed signature page) will have the same force, effect and legal status as originals.

18.    **Modifications and Waivers**.  This Guaranty may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Hilton or Guarantor, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

19.    **Joint and Several Liability**.  If Guarantor consists of more than one person or entity, the obligations of each such person or entity under this Guaranty are joint and several.

20.    **Interest**.  Any amounts that become due and payable by Guarantor under this Guaranty shall bear interest at a rate per annum equal to the default rate specified in the Management Agreement from the date such sums first become due and payable to the date that such sums are paid to Hilton.

21.    **Invalid Provisions**.  If any provision of this Guaranty is held invalid, illegal or unenforceable for any reason, the remainder of this Guaranty shall in no way be affected and shall remain valid and enforceable for all purposes and the provision in question shall be deemed replaced with a provision that is valid and enforceable and Hilton reasonably believes most nearly reflects its original intent.

22.    **Headings**.  Section headings are for convenience of reference only and shall in no way affect the interpretation of this Guaranty.

23.    **Recitals**.  The recital and introductory paragraphs hereof are a part hereof, form a basis for this Guaranty and shall be considered prima facie evidence of the facts and documents referred to therein.

24.    **Governing Law**.  This Guaranty shall be governed, construed and interpreted as to validity, enforcement and in all other respects, in accordance with the laws of the State of New York pursuant to Section 5-1401 of the New York General Obligations Law.

7

US_ACTIVE\124065075\V-3

[NO FURTHER TEXT ON THIS PAGE]

8

IN WITNESS WHEREOF, Guarantor has duly executed this Guaranty as of the date first set forth above.

**GUARANTOR:**

DocuSigned by:

*Sam Hirbod*

9A35E45EE46843D...

Sam Hirbod, an individual

[signature page to Personal Guaranty (Mezz Upsizing)]