**UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF VIRGINIA – ALEXANDRIA DIVISION**

| | |
|---|---|
| HILTON WORLDWIDE HOLDINGS INC.,<br><br>        Plaintiff,<br><br>v.<br><br>SAM HIRBOD, FMT SJ HOLDINGS LLC, AND EAGLE CANYON HOLDINGS, LLC,<br><br>        Defendants. | Case No. 1:25-cv-02104 |

**PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION**
**TO DEFENDANTS' MOTION TO DISMISS**

Craig C. Reilly
VSB # 20942
429 N. St. Asaph Street
Alexandria, VA 22314
Telephone: (703) 549-5354
Fax: (703) 549-5355
Email: craig.reilly@ccreillylaw.com

Andrew S. Tulumello (pro hac vice)
Chantale Fiebig (pro hac vice)
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Telephone: (202) 682-7000
Facsimile: (202) 857-0940
Email: drew.tulumello@weil.com
Email: chantale.fiebig@weil.com

*Counsel for Plaintiff*
*Hilton Worldwide Holdings Inc.*

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................ 2

LEGAL STANDARD.................................................................................................... 5

ARGUMENT ................................................................................................................ 5

I.  The Reimbursement Contracts Foreclose Defendants' Argument that Hilton Was Required to Engage in Pre-Suit Mediation. ........................................................ 6

    A.  The Reimbursement Contracts Do Not Require Pre-Suit Mediation...................... 6

    B.  The Reimbursement Contracts Refute Defendants' Reliance on the BAMA................................................................................................................. 7

    C.  ECH and Hirbod Waived Any Mediation-Based Defense. ................................... 9

II.  The BAMA Refutes Defendants' Argument that Hilton Was Required to Engage in Pre-Suit Mediation. ........................................................................................ 10

    A.  The BAMA Does Not Apply to Nonparty Hilton Worldwide Holdings Inc. ........ 10

    B.  Hilton's Claims Fall Outside the Scope of the BAMA's Mediation Provision. ............................................................................................................ 12

    C.  Defendants' "Integrated Contract" Argument Lacks Merit................................. 14

CONCLUSION............................................................................................................ 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*,
    524 F.3d 1235 (11th Cir. 2008) .................................................................................18

*Archstone Dev. LLC v. Renval Constr. LLC*,
    67 N.Y.S.3d 7 (App. Div. 2017) ...............................................................................17

*Bank of N.Y. Mellon Tr. Co., N.A. v. Morgan Stanley Mortg. Cap., Inc.*,
    821 F.3d 297 (2d Cir. 2016) .....................................................................................13

*Beal Sav. Bank v. Sommer*,
    8 N.Y.3d 318 (2007) ............................................................................................8, 15

*Belzberg v. Verus Invs. Holdings Inc.*,
    21 N.Y.3d 626 (2013) ...............................................................................................11

*Berezovskaya v. Deutsche Bank Nat'l Trust Co.*,
    2014 WL 4471560 (E.D.N.Y. Aug. 1, 2014).............................................................11

*Bordonaro v. E.C. Provini Co.*,
    2025 WL 290430 (N.Y. Sup. Ct. Jan. 24, 2025) ........................................................8

*Byers v. City of Richmond*,
    2025 WL 85224 (E.D. Va. Jan. 13, 2025) ..................................................................5

*Duration Mun. Fund, L.P. v. J.P. Morgan Sec. Inc.*,
    2009 WL 2999201 (N.Y. Sup. Ct. Sept. 16, 2009).....................................................8

*E.E.O.C. v. Waffle House, Inc.*,
    534 U.S. 279 (2002).................................................................................................10

*Ellington v. EMI Music, Inc.*,
    24 N.Y.3d 239 (2014) ...............................................................................................15

*Gater Assets Ltd. v. AO Moldovagaz*,
    2 F.4th 42 (2d Cir. 2021) ..........................................................................................12

*Greenfield v. Philles Records, Inc.*,
    98 N.Y.2d 562 (2002)..................................................................................................7

*Hometown Servs., Inc. v. EquityLock Sols., Inc.*,
    2014 WL 4406972 (W.D.N.C. May 8, 2014) ...........................................................18

*Jenkins v. McKeithen*,
  395 U.S. 411 (1969)........................................................................................................5

*Kane Builders S & D, Inc. v. Md. CVS Pharm., LLC*,
  2013 WL 2948381 (D. Md. June 13, 2013)...................................................................18

*Life Techs. Corp. v. AB Sciex Pte. Ltd.*,
  803 F. Supp. 2d 270 (S.D.N.Y. 2011)............................................................................12

*MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*,
  268 F.3d 58 (2d Cir. 2001)............................................................................................12

*Nationwide Gen. Ins. Co. v. Invs. Ins. Co. of Am.*,
  37 N.Y.2d 91 (1975)......................................................................................................13

*Penavic v. Penavic*,
  930 N.Y.S.2d 634 (App. Div. 2011)..............................................................................13

*Primex Int'l Corp. v. Wal-Mart Stores, Inc.*,
  89 N.Y.2d 594 (1997)....................................................................................................13

*Republican Party of N.C. v. Martin*,
  980 F.2d 943 (4th Cir. 1992) ..........................................................................................5

*Roberts v. Edith Roman Holdings, Inc.*,
  2011 WL 2078223 (S.D.N.Y. May 19, 2011) .................................................................7

*Shahmohamad v. Shahmohmamad*,
  228 N.Y.S.3d 384 (App. Div. 2025)..............................................................................18

*Smith v. Shields Sales Corp.*,
  802 N.Y.S.2d 764 (App. Div. 2005)..............................................................................16

*Smith Barney Shearson Inc. v. Sacharow*,
  91 N.Y.2d 39 (1997)......................................................................................................13

*Snyder v. Wells Fargo Bank, N.A.*,
  2011 WL 6382707 (S.D.N.Y. Dec. 19, 2011) ........................................................15, 16

*Sohmer v. Hwang*,
  2021 WL 2582804 (W.D.N.C. June 23, 2021) ................................................................5

*Stefatos v. Fred-Doug Manager, LLC*,
  982 N.Y.S.2d 886 (App. Div. 2014)..............................................................................11

*Teletech Europe B.V. v. Essar Servs. Mauritius*,
  921 N.Y.S.2d 62 (App. Div. 2011)................................................................................16

*Zinna v. StrongArm Ventures, LLC,*
2025 WL 311005 (N.Y. Sup. Ct. 2025)..................................................................................11

**Statutes**

28 U.S.C. § 1332(a)(1).................................................................................................................5

Defendants Sam Hirbod ("Hirbod"), FMT SJ Holdings LLC ("FMT"), and Eagle Canyon Holdings, LLC ("ECH") (together, "Defendants") have flagrantly breached their iron-clad and express contractual obligation to reimburse Plaintiff Hilton Worldwide Holdings Inc. ("Hilton") more than $29.3 million. Hilton guaranteed a loan that JPMorgan made to a Hirbod affiliate so that the affiliate could operate the Signia by Hilton San Jose (the "Hotel"). Hilton insisted that the three Defendants provide backstop guarantees to Hilton, which they did in four contracts (together, the "Reimbursement Contracts") that require Defendants to promptly reimburse Hilton if Hilton were forced to purchase the loan from JPMorgan due to an event of default. In 2024, Hirbod's affiliate defaulted on the loan to JPMorgan, and Hilton (as guarantor) purchased the loan for $29.3 million plus accrued interest. This triggered Defendants' obligation in the Reimbursement Contracts to promptly reimburse Hilton for more than $29.3 million. For well over a year, Defendants have refused to pay.

Defendants do not question the validity of the Reimbursement Contracts; they do not challenge Hilton's allegations that Defendants have materially breached the Reimbursement Contracts; and they do not dispute that Defendants' material breaches have caused Hilton more than $29.3 million of damages. Defendants instead seek dismissal without prejudice solely on the ground that Hilton did not engage in pre-suit mediation. This argument fails for two reasons.

*First*, the Reimbursement Contracts refute Defendants' position. Defendants contend that Hilton was required to engage in pre-suit mediation before bringing claims under the Reimbursement Contracts, but Defendants concede that the Reimbursement Contracts contain *no pre-suit mediation requirement.* Recognizing this problem, Defendants invoke the mediation provision from a separate contract—the Branding and Management Agreement ("BAMA") between a Hilton affiliate and a Hirbod affiliate—even though they concede Hilton has not asserted

any claim under the BAMA. Nothing supports Defendants' attempt to make the BAMA's mediation provision applicable to the Reimbursement Contracts. The Reimbursement Contracts were written deliberately to provide Hilton with an efficient remedy to recover funds from the Defendants under defined circumstances. They contain "entire agreement" provisions that bar importing a mediation provision from a separate contract. The Reimbursement Contracts also expressly establish the independence of Hilton's actions under the Reimbursement Contracts from the Hilton affiliate's actions under the BAMA. Finally, ECH and Hirbod expressly and broadly waived any mediation-based defense in the Reimbursement Contracts.

*Second*, the BAMA itself refutes Defendants' position. The Defendants are not parties to the BAMA. Neither is Hilton. The BAMA's mediation provision does not apply here because, under its specific terms, the mediation provision expressly applies only to the BAMA's "Parties," which Hilton and Defendants are not. And Defendants' argument that the BAMA and the Reimbursement Contracts must be read together is meritless. Even when reading contracts together, courts routinely refuse to lift contractual terms from one contract to another, as Defendants propose here.

In short, Defendants' motion to dismiss has no merit. It represents a transparent attempt to further delay Defendants' clear contractual obligation to reimburse Hilton more than $29.3 million. The Court should deny the motion so Hilton can expeditiously prosecute its case.

## BACKGROUND

In 2018, two Hirbod-owned entities acquired the Hotel then branded as the San Jose Fairmont. Dkt. 1 ("Compl.") ¶¶ 15–16. They defaulted on the corresponding mortgage less than two years later and filed voluntary Chapter 11 bankruptcy petitions. *Id.* In the wake of those proceedings, Hirbod selected a Hilton affiliate to manage the Hotel—which rebranded as the Signia by Hilton San Jose—and sought a $25 million mezzanine loan from JPMorgan (the amount

was later increased to $29.3 million).  *Id.* ¶¶ 18–19.  JPMorgan would agree to issue Hirbod's affiliate the mezzanine loan, however, only if Hilton guaranteed it.  *Id.* ¶ 2.  Hilton agreed to do so—but only after securing Reimbursement Contracts with each Defendant.[1]  *See* Dkt. 16-1 ("Mot."), Exs. B–E.   The Reimbursement Contracts unambiguously require Defendants to reimburse Hilton for any amount Hilton paid to JPMorgan if Hirbod (through his affiliated entity) defaulted on the mezzanine loan.  Compl. ¶ 20; *see also* Mot., Exs. B–E.

The Reimbursement Contracts strongly protect Hilton; Defendants waived many defenses, and the Reimbursement Contracts require Defendants to pay Hilton interest, attorneys' fees, costs, and expenses.  Compl. ¶ 4; *see also* Mot., Exs. B–E.  The Reimbursement Contracts specifically address litigation between the parties in provisions that contain no requirement to engage in mediation before initiating litigation. *See* Mot., Exs. B–E.

In connection with the management of the Hotel, different entities—NEX SJ LLC, a Hirbod affiliate, and Signia Hotel Management LLC, a Hilton affiliate—executed a separate contract, the BAMA.  *See* Mot., Ex. A.  No party in this action (Hilton, FMT, ECH, and Hirbod)

---

[1] The Reimbursement Contracts consist of FMT's Reimbursement Agreement (Ex. B), ECH's Guaranty (Ex. C), Hirbod's Springing Guaranty (Ex. D), and Hirbod's Personal Guaranty (Ex. E). All but Hirbod's Personal Guaranty were signed on November 8, 2021; the Personal Guaranty was signed on July 9, 2023, after a $4.3 million increase to the mezzanine loan amount.

FMT's Reimbursement Agreement and ECH's Guaranty obligate FMT and ECH to reimburse Hilton for the full reimbursement amount due to Hilton, at least $29.3 million.  *See* Exs. B–C. Hirbod's Springing Guaranty obligates Hirbod personally to pay the same sum to Hilton if a "springing recourse event" occurs.  *See* Ex. D.  A springing recourse event is defined to be "[ECH] contest[ing], oppos[ing] or rais[ing] any defenses to any claim or demand by Hilton under [ECH's] Guaranty of [FMT's] Reimbursement Agreement Obligations on any basis related to or in connection with the invalidity, illegality, or unenforceability of all or any part of the 'Guaranteed Obligation' thereunder …"  Compl. ¶ 94; *see also* Ex. D. at 3 (§ 1(c)(viii)).

ECH's failure to respond to Hilton's June and July 2024 demand and default notices constitutes a springing recourse event, triggering Hirbod's full liability of the $29.3 million.  *See* Compl. ¶¶ 54–55.

is a party to the BAMA.  *Id.*  The BAMA does not address Defendants' reimbursement obligations if Hilton purchased the mezzanine loan from JPMorgan.  *Id.*  The BAMA instead addresses operational logistics regarding the branding and management of the Hotel.  *See id.*  Among other things, the BAMA addresses the renovation of the Hotel, *id.* § 2.2; the re-launch of the Hotel and related budget issues, *id.* § 3; and operational details, *id.* § 4, including mandatory guest fees, *id.* § 4.7, the employment of Hotel personnel, *id.* § 4.8, brand standards, *id.* § 7, repairs and maintenance, *id.* § 8, books and records, *id.* § 9.1, and working capital requirements, *id.* § 9.2.  The BAMA includes a pre-suit mediation requirement, but the provision is narrow; it states that the "Parties" to the BAMA—that is, NEX SJ LLC and Signia Hotel Management LLC—must engage in pre-suit mediation for disputes "arising out of or relating to" the BAMA or the relationship created between them.  *Id.* § 19.2.1.

In June 2024, Hirbod's affiliate defaulted on the mezzanine loan, the Hotel entered foreclosure, and Hilton purchased the mezzanine loan from JPMorgan for $29,859,178.81.  Compl. ¶¶ 39–40.  Hilton's purchase of the mezzanine loan triggered Defendants' contractual obligation to reimburse Hilton.  *Id.* ¶ 41.  Just days later, on June 25, 2024, Hilton sent notices to Defendants demanding the full reimbursement amount from FMT and ECH (and $4.3 million from Hirbod personally); receiving no response, Hilton sent default notices to Defendants on July 11, 2024.  *Id.* ¶¶ 43–44, 47–48, 51–52.[2]  Defendants never responded to the demands for payment or default notices.  On the contrary, Defendants proposed engaging in mediation for the first time in

---

[2] Defendants' assertion that "Hilton commenced this action without providing notice of a dispute" to Defendants, Mot. at 4, is demonstrably false.

December 2025, Mot. at 4—approximately 18 months after Hilton demanded payment from Defendants, and only after Hilton initiated this action.

## LEGAL STANDARD

Defendants assert that courts are "divided" on whether their motion should be considered under Rule 12(b)(1) for lack of subject-matter jurisdiction or under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Mot. at 6. Defendants' motion is properly construed as a motion under Rule 12(b)(6) because Defendants do not contend that this Court lacks subject-matter jurisdiction: They do not dispute that the parties are completely diverse or that the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a)(1). And courts in this Circuit consider motions to dismiss based on contractual mediation provisions under Rule 12(b)(6). *See, e.g.*, *Sohmer v. Hwang*, 2021 WL 2582804, at *2 (W.D.N.C. June 23, 2021).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Byers v. City of Richmond*, 2025 WL 85224, at *3 (E.D. Va. Jan. 13, 2025) (citing *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). The Court "must assume that the allegations of the complaint are true and construe them in the light most favorable to [Hilton]." *Martin*, 980 F.2d at 952 (citing *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969)). Regardless of whether Defendants' motion is considered under Rule 12(b)(1) or 12(b)(6), it should be denied for the reasons herein.

## ARGUMENT

The Court should deny Defendants' motion to dismiss. The Reimbursement Contracts and the BAMA each compel this result.

**I.     The Reimbursement Contracts Foreclose Defendants' Argument that Hilton Was Required to Engage in Pre-Suit Mediation.**

Defendants seek dismissal because Hilton failed to engage in pre-suit mediation.  *See* Mot. at 1.  The Reimbursement Contracts foreclose Defendants' position for at least three reasons: (A) the Reimbursement Contracts contain no pre-suit mediation requirement; (B) the plain language of the Reimbursement Contracts refutes Defendants' reliance on the BAMA's mediation provision; and (C) Defendants ECH and Hirbod expressly waived any mediation-based defense.

**A.     The Reimbursement Contracts Do Not Require Pre-Suit Mediation.**

Hilton sued Defendants for breaching their contractual obligation to reimburse Hilton under the Reimbursement Contracts.  *See* Compl. ¶¶ 64–119.  The Reimbursement Contracts specifically address litigation between the parties.  Each Reimbursement Contract includes a section titled "Jurisdiction," which identifies the courts with "exclusive jurisdiction" over any "action or proceeding" and addresses the "service of any summons and complaint."  Ex. B § 11; *see also* Ex. C § 14 (same); Ex. D § 13 (same); Ex. E § 13 (same).  Each Reimbursement Contract waives the right to a jury trial.  *See* Ex. B § 14; Ex. C § 13; Ex. D § 12; Ex. E § 12.  And Section 4 of FMT's Reimbursement Agreement specifically provides that, if FMT fails to "reimburse the Hilton Parties," then "Hilton may exercise any right or remedy available to it at law or in equity, including the right to sue for specific performance thereof."  Ex. B § 4.

The Reimbursement Contracts particularly address litigation between the parties, and none requires mediation before litigation.  Defendants have not identified any mediation provision in the Reimbursement Contracts.  *See* Mot. at 1–14.  Nor could they; no Reimbursement Contract mentions mediation.  *See* Exs. B–E.  The Reimbursement Contracts' silence on mediation forecloses Defendants' position that Hilton was required to mediate before enforcing the Reimbursement Contracts.

**B.     The Reimbursement Contracts Refute Defendants' Reliance on the BAMA.**

Hilton has not asserted claims under the BAMA, as Defendants concede.  *See* Mot. at 11. Yet Defendants contend that the BAMA's mediation provision nonetheless applies to Hilton's claims under the Reimbursement Contracts.  *Id.* at 9–14.  The Reimbursement Contracts foreclose this argument too.

Each Reimbursement Contract includes an "Entire Agreement" provision; these provisions are also sometimes referred to as "merger" or "integration" clauses.  Section 12 of FMT's Reimbursement Agreement states that "**This Agreement** . . . **constitutes the entire agreement of the parties hereto** with respect to the subject matter hereof."  Ex. B § 12 (emphasis added).  The ECH Guaranty, Hirbod Springing Guaranty, and Hirbod Personal Guaranty similarly state that "**this Guaranty . . . alone fully and completely expresses the agreement of Guarantor and Hilton**."  Ex. C § 17 (emphasis added); *see also* Ex. D § 16 (same); Ex. E § 16 (same).

These provisions cannot be reconciled with Defendants' contention that the BAMA's mediation provision somehow applies to claims under the Reimbursement Contracts.  *See* Mot. at 9–14.  New York law mandates enforcing the "plain meaning" of "clear and unambiguous" provisions, *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002), and "gives full effect to merger clauses," *Roberts v. Edith Roman Holdings, Inc.*, 2011 WL 2078223, at *3 (S.D.N.Y. May 19, 2011).[3]   Here, the Reimbursement Contracts' "Entire Agreement" provisions unambiguously establish that the Reimbursement Contracts represent the parties' "entire" or "full" agreement.  *See* Ex. B § 12; Ex. C § 17; Ex. D § 16; Ex. E § 16.  The language within the four corners of the Reimbursement Contracts thus controls, and that language includes no pre-suit

---

[3] The parties agree that substantive New York law governs this dispute and the interpretation of the Reimbursement Contracts.  Mot. at 8; Compl. ¶ 14.

mediation requirement. And the Reimbursement Contracts' "entire agreement" provisions plainly bar importing the BAMA's mediation provision into the Reimbursement Contracts, as Defendants propose. *See Beal Sav. Bank v. Sommer*, 8 N.Y.3d 318, 324 (2007) ("[T]he four corners of the" contract "should be enforced according to its terms.").

Indeed, New York courts routinely hold that "entire agreement" clauses like the ones here forbid importing terms from a separate contract. In *Bordonaro v. E.C. Provini Co.*, for example, the court held that "an entire agreement clause which states there are no other agreements or understandings" between the parties precluded "incorporat[ing] the terms of other contracts." 2025 WL 290430, at *3 (N.Y. Sup. Ct. Jan. 24, 2025). Other cases reach similar conclusions. *See, e.g.*, *Duration Mun. Fund, L.P. v. J.P. Morgan Sec. Inc.*, 2009 WL 2999201, at *3 (N.Y. Sup. Ct. Sept. 16, 2009) (declining to import "obligations regarding … disputed margin calls" under "separate agreements to which Defendant … is not a party" in part because the relevant agreement contained an entire agreement clause), *aff'd*, 908 N.Y.S.2d 684 (App. Div. 2010).

Furthermore, to make clear that Hilton's rights as guarantor of JPMorgan's mezzanine loan are separate from the agreement related to the operation of the Hotel, Section 19 of FMT's Reimbursement Agreement memorializes the separateness of Hilton's actions under the Reimbursement Contracts regarding the mezzanine loan (and the corresponding guarantees), on the one hand, and Hilton's affiliate's actions under the BAMA regarding management of the Hotel, on the other hand. The provision states in full:

> The parties hereto acknowledge and agree that, (i) **the actions taken by any Hilton Party hereunder** or, from and after the date any Hilton Party acquires the Mezzanine Loan, under the Loan Documents, **are independent from the actions taken by Manager under the Management Agreement**, (ii) that **the actions taken by Manager in connection with the Management Agreement are independent from the actions taken by any Hilton Party hereunder** or, from and after the date any Hilton Party acquires the Mezzanine Loan, under the Loan Documents, (iii) **no action by any Hilton Party will be imputed to Manager**

**under the Management Agreement, and vice versa**, and (iv) nothing herein shall constitute a waiver or release or otherwise affect or impact any rights of Manager under the Management Agreement or Lender under the Loan Documents.

Ex. B § 19 (emphases added). This language is unambiguous: "[T]he actions taken by any Hilton Party … under the Loan Documents"—including Hilton's purchase of the mezzanine loan and Defendants' corresponding obligation to reimburse Hilton—"are independent from the actions taken by Manager under [the BAMA]," and "no action by any Hilton Party will be imputed to Manager under the Management Agreement, and vice versa." *Id.* This language explicitly forecloses Defendants' attempt to conflate the BAMA and the Reimbursement Contracts.

**C.      ECH and Hirbod Waived Any Mediation-Based Defense.**

The Reimbursement Contracts foreclose ECH's and Hirbod's position for another, independent reason. In the ECH Guaranty (Ex. C), Hirbod's Springing Guaranty (Ex. D), and Hirbod's Personal Guaranty (Ex. E), ECH and Hirbod broadly waived defenses to Hilton's claims for reimbursement—including defenses based on any purported mediation requirement.

The waiver provision in each of these Reimbursement Contracts is expansive; among other things, ECH and Hirbod *waived*:

- "notice of the acceptance hereof, presentment, demand for payment, protest, notice of protest, **or any and all** notice of non-payment, non-performance or **non-observance**, or other proof, or notice or demand, whereby to charge Guarantor therefor";

- "any claim that the obligations of Obligor are unenforceable or invalid **or are otherwise not effective for any reason**"; and

- **"to the fullest extent permitted by law, any other circumstance** or any existence of or reliance on any representation by Hilton that might vary the risk of Guarantor or otherwise operate as a defense, any and all other defenses or benefits that may be derived from or afforded by applicable law limiting the liability of or exonerating guarantors or sureties (other than payment)."

Ex. C § 11 (emphases added); *see also* Ex. D § 10 (same); Ex. E § 10 (same).

These sweeping waivers apply here and foreclose Defendants' mediation argument. Defendants' mediation argument is a defense based on (1) an alleged "non-observance"—*i.e.*, a failure to observe a contractual requirement—(2) a "claim" that ECH's and Hirbod's obligations are "otherwise not effective for any reason," and (3) "any other circumstance." Ex. C § 11; *see also* Ex. D § 10; Ex. E § 10. ECH and Hirbod have thus waived any mediation-based defense three times over.

## II. The BAMA Refutes Defendants' Argument that Hilton Was Required to Engage in Pre-Suit Mediation.

The plain language of the Reimbursement Contracts alone dooms Defendants' motion. On top of that, the BAMA likewise rebuts Defendants' contention that the BAMA's mediation provision applies to the Reimbursement Contracts. *See* Mot. at 9–14. The BAMA involves *different* contracting parties than the Reimbursement Contracts and is therefore inapplicable. Moreover, even if the BAMA applied to the Reimbursement Contracts (it does not), the BAMA's mediation provision would still be inapplicable under the plain limiting language of the BAMA. Finally, the BAMA's text forecloses Defendants' "integrated contract" theory.

### A. The BAMA Does Not Apply to Nonparty Hilton Worldwide Holdings Inc.

Based on the specific terms and language in the BAMA here, Defendants cannot impose the BAMA's mediation obligation on Hilton. As a general rule, "a contract cannot bind a nonparty." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). Defendants do not dispute that the Reimbursement Contracts and the BAMA involve different, nonoverlapping contracting parties. *See* Mot. at 12 (arguing the BAMA should apply "beyond the narrow set of signatories"). Nor could they. The parties to the Reimbursement Contracts and to this lawsuit are (a) Plaintiff Hilton and (b) Defendants FMT, ECH, and Hirbod. *See* Exs. B–E. By contrast, the parties to the BAMA are NEX SJ LLC and Signia Hotel Management LLC. *See* Ex. A. Defendants contend

that the BAMA's mediation provision applies to Hilton, but Hilton is not a party to the BAMA. *See* Ex. A at 1, 11, 13–14. And Defendants have not identified any exception to the general rule that a nonparty to a contract cannot be bound by it. Hilton therefore cannot be bound by the BAMA. *See Stefatos v. Fred-Doug Manager, LLC*, 982 N.Y.S.2d 886, 886 (App. Div. 2014) ("There is no basis for any breach of contract claim against Defendant . . ., as it is not a party to the [agreement]."). Plus, the specific facts of this case are even more extreme: *Defendants* are not parties to the BAMA either and so lack standing to enforce it. *See, e.g.*, *Berezovskaya v. Deutsche Bank Nat'l Trust Co.*, 2014 WL 4471560, at \*5 (E.D.N.Y. Aug. 1, 2014). Defendants urge this Court to allow them (nonparties) to enforce the BAMA against another nonparty (Hilton), contrary to fundamental principles of New York contract law.

Defendants' counterargument lacks merit. Recognizing that Hilton is not a party to the BAMA, Defendants invoke the doctrine of direct-benefits estoppel. Mot. at 12. This doctrine provides that "a nonsignatory may be compelled to arbitrate where the nonsignatory knowingly exploits the benefits of an agreement containing an arbitration clause, and receives benefits flowing **directly** from the agreement." *Zinna v. StrongArm Ventures, LLC*, 2025 WL 311005, at \*4 (N.Y. Sup. Ct. 2025) (emphasis added) (quoting *Belzberg v. Verus Invs. Holdings Inc.*, 21 N.Y.3d 626, 631 (2013)). This doctrine typically arises in the context of arbitration provisions, and Defendants cite no cases applying it to mediation provisions. But even assuming this doctrine could somehow apply here, it does not support Defendants.

Defendants bear the burden of demonstrating that the nonparty directly benefited from the agreement containing the arbitration provision. *See Belzberg*, 21 N.Y.3d at 634. Defendants failed to meet that burden here. Their motion offers a single, conclusory sentence as to the nature of any benefit: "[T]he BAMA confers substantial and direct economic, operational, branding, intellectual-

property, indemnification, and dispute-resolution benefits on Plaintiff and its affiliates." Mot. at 12. The BAMA, however, demonstrates that NEX SJ LLC and Signia Hotel Management LLC directly benefited from the BAMA rather than Hilton. Management fees were to be paid from NEX SJ LLC to Signia Hotel Management LLC (*see* Ex. A § 5.1.1); branding rights benefited NEX SJ LLC (*see id.* § 5.1.3); indemnification was mutual between NEX SJ LLC and Signia Hotel Management LLC (*see id.* §§ 10.2.1, 10.2.2); and intellectual property rights were maintained at the status quo (*see id.* § 11.2.1: "Manager will use Manager's Intellectual Property in the operation of the Hotel to the extent Manager considers appropriate . . . .").

At most, Defendants allege a relationship between Signia Hotel Management LLC and Hilton as affiliates. That is not enough. "[T]he mere fact of a nonsignatory's affiliation with a signatory will not suffice to estop the nonsignatory from avoiding arbitration, no matter how close the affiliation is." *Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 68–69 (2d Cir. 2021) (quoting *Life Techs. Corp. v. AB Sciex Pte. Ltd.*, 803 F. Supp. 2d 270, 274 (S.D.N.Y. 2011)); *see also MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 62 (2d Cir. 2001) ("[A] signatory may not estop a nonsignatory from avoiding arbitration regardless of how closely affiliated that nonsignatory is with another signing party.").

**B. Hilton's Claims Fall Outside the Scope of the BAMA's Mediation Provision.**

Even if the BAMA's mediation provision could bind a nonparty (it cannot), and even if Defendants had standing to assert the provision (they do not), Hilton's claims fall outside the scope of the provision. The BAMA's mediation provision applies only to the "Parties" to the BAMA. It provides that "**the Parties** may not commence litigation or other legal proceedings" without first attempting to resolve the dispute via mediation. Ex. A § 19.2.1 (emphasis added). The BAMA defines a "Party" as "a party to this Agreement," and only NEX SJ LLC and Signia Hotel Management LLC are parties to the BAMA—Hilton and Defendants indisputably are not. *Id*. at

1, 11, 13–14.   Accordingly, the BAMA's mediation provision does not apply to Hilton based on the plain language of the provision.[4]

The BAMA's structure reinforces this conclusion.  The BAMA includes a defined term "Related Parties," which includes affiliates of the "Parties."  *See* Ex. A at 15.  Several BAMA provisions include the defined term "Related Parties."  *See, e.g.*, Ex. A § 3.4.3 ("Owner agrees to" indemnify "Manager and its Related Parties"); *id.* § 10.2.4 (similar); *id.* § 22.14 (similar).  The parties thus knew how to use the term "Related Parties" when they intended a BAMA provision to impact affiliates of the Parties NEX SJ LLC and Signia Hotel Management LLC.  Yet, the BAMA's mediation provision expressly applies only to the "Parties" to the BAMA; the provision does not mention the defined term "Related Parties."  Ex. A § 19.2.1.  New York law follows the "well established principle that, where contract provisions use different language, courts must assume the parties intended different meanings."  *Bank of N.Y. Mellon Tr. Co., N.A. v. Morgan Stanley Mortg. Cap., Inc.*, 821 F.3d 297, 309 (2d Cir. 2016).  This principle squarely applies here and demonstrates that the BAMA's mediation provision (§ 19.2.1) applies only to the "Parties," not their affiliates.  The Court should reject Defendants' invitation to rewrite the contract by adding the defined term "Related Parties" to the BAMA's mediation provision.  *See Penavic v. Penavic*, 930 N.Y.S.2d 634, 672 (App. Div. 2011) ("A court should not, under the guise of contract

---

[4] Defendants cite three cases in purported support of their contention that, "[u]nder New York law [the mediation clause's] language is broad and is construed to encompass all disputes that have a significant relationship to the agreement or the contractual relationship it creates."  Mot. at 10. Each is inapposite. *Primex International Corp. v. Wal-Mart Stores, Inc.*, 89 N.Y.2d 594, 599–600 (1997), addresses the omission of an arbitration clause in successive agreements between the same parties; *Nationwide General Insurance Co. v. Investors Insurance Co. of America*, 37 N.Y.2d 91, 94–96 (1975), discusses the court's limited role in determining whether a dispute is arbitrable; and *Smith Barney Shearson Inc. v. Sacharow*, 91 N.Y.2d 39, 49 (1997), evaluates the intersection between a choice of law provision and the parties' intention to arbitrate "any and all controversies." These cases decide issues not relevant to those here.

interpretation, imply a term which the parties themselves failed to insert or otherwise rewrite the contract.").

Defendants contend that the BAMA's definition of "Claims" broadens the scope of the mediation provision because the definition covers affiliates of NEX SJ LLC and Signia Hotel Management LLC. Mot. at 12. But the BAMA's mediation provision does not use the capitalized, defined term "Claim[]"; it instead uses the lowercase, undefined term "claim." *Compare* Ex. A § 19.2.1 (mediation provision covering any "**c**laim" (emphasis added)), *with id.* § 4.7 (mandatory guest fee provision addressing "**C**laims asserted against or incurred by Manager" (emphasis added)). The defined term "Claim[]" does not support Defendants' position because the BAMA's mediation provision does not use it.

Thus, this dispute under the Reimbursement Contracts falls outside the scope of the BAMA's mediation provision, and for good reason. The BAMA governs the Hotel's operations and logistics; the Reimbursement Contracts, by contrast, impose straightforward obligations requiring Defendants to swiftly reimburse Hilton upon the occurrence of certain conditions. Given the clear distinctions between the contracts, the BAMA and the Reimbursement Contracts unsurprisingly include express provisions establishing their independence. Mediation is not a precondition to Hilton's action here—and requiring it would undermine the expedited reimbursement remedy that Hilton and Defendants negotiated.

### C. Defendants' "Integrated Contract" Argument Lacks Merit.

Defendants contend that the BAMA and the Reimbursement Contracts are "part of a single integrated transaction" and, "[u]nder New York law, contracts executed as part of a single integrated transaction must be construed together." Mot. at 11. But "construing together" the BAMA and the Reimbursement Contracts does not support Defendants' position. Contract interpretation turns on a contract's language and structure: "Where the terms of a contract are clear

and unambiguous, the intent of the parties must be found within the four corners of the contract, giving a practical interpretation to the language employed and reading the contract as a whole." *Ellington v. EMI Music, Inc.*, 24 N.Y.3d 239, 244 (2014); *see also Beal Sav. Bank*, 8 N.Y.3d at 324. Under this foundational rule of contract construction, the Reimbursement Contracts clearly and unambiguously do not require mediation: The contracts contain no mediation requirement (despite including other dispute resolution provisions); the contracts include "entire agreement" clauses which preclude importing terms from outside the four corners of the contract; and FMT's Reimbursement Agreement explicitly establishes the independence of the Reimbursement Contracts and the BAMA. *See supra* § I. Nor does the BAMA support requiring mediation for disputes under the Reimbursement Contracts. *See supra* §§ II.A–B. Regardless of whether the BAMA and the Reimbursement Contracts are read separately or together, the contractual language and structure mandate the same result: The Reimbursement Contracts do not require pre-suit mediation.

Courts regularly reject attempts to superimpose the terms from one contract onto another contract even when reading contracts together. *Snyder v. Wells Fargo Bank, N.A.* is directly on point here. 2011 WL 6382707 (S.D.N.Y. Dec. 19, 2011). In *Snyder*, an individual executed two contracts with a financial institution: (1) an "Individual Retirement Account" ("IRA") contract, and (2) an "Investment Management Agreement" ("IMA") contract. *Id.* at *2. The IRA contract included an arbitration provision, but the IMA contract did not. *Id.* The court rejected defendant's argument that the IRA's broad arbitration provision required arbitrating disputes under the IMA. *Id.* at *4–6. Although the court recognized that "multiple documents executed at the same time and concerning the same subject-matter are required to be read together under New York law," it

held that "**this does not mean that arbitration clauses—or any other particularized clauses— can be lifted from one document and transferred to another**." *Id.* at \*5 (emphasis added).

*Snyder*'s conclusion also rested on (1) the intentional differences between the IRA and the IMA and (2) the existence of an "entire agreement" clause in the IMA. "[T]he omission of an arbitration clause in the IMA," the court concluded, "suggests that Snyder *did not* agree to arbitrate disputes under the IMA since the omission of an arbitration clause in an otherwise comparable document strongly suggests that such omission was intentional." *Id.* (emphasis in original). Moreover, "[t]he fact that the IMA contains a merger clause"—*i.e.*, an "entire agreement" provision—"further evidence[d] the intent of the parties not to require arbitration regarding disputes arising under the IMA." *Id.*

*Snyder*'s reasoning directly applies here. The parties to the BAMA intentionally included a pre-suit mediation requirement in the BAMA, but a different set of parties to the separate Reimbursement Contracts omitted that provision. *See supra* §§ I, II.A–B. Like the IRA and IMA in *Snyder*, the Reimbursement Contracts and the BAMA each contain a "merger" or "entire agreement" provision stating that the four corners of each contract control. Ex. A § 22.5; Ex. B § 12; Ex. C § 17; Ex. D § 16; Ex. E § 16. Thus, as it did in *Snyder*, New York law forbids "lift[ing]" a "particularized clause[]" from the BAMA and "transferr[ing]" it to the Reimbursement Contracts. *Snyder*, 2011 WL 6382707, at \*4–5.

*Snyder* is emblematic of a long line of cases refusing to lift provisions from one contract and import them into another. *See, e.g.*, *Teletech Europe B.V. v. Essar Servs. Mauritius*, 921 N.Y.S.2d 62 (App. Div. 2011) (refusing to transpose an arbitration clause from a stock transfer agreement to an escrow agreement); *Smith v. Shields Sales Corp.*, 802 N.Y.S.2d 764, 765 (App. Div. 2005) (noting that, although contemporaneous agreements should be read together, "it does

not follow . . . that the arbitration clause in [one] agreement applies to all disputes arising out of any of the documents related to this transaction"). Defendants' proposal to add the BAMA's mediation provision to the Reimbursement Contracts, *see* Mot. at 9–14, thus lacks any legal support.[5]

On top of this, the contracts here contain unique provisions that further reinforce the separateness of the BAMA and the Reimbursement Contracts. As detailed above, Section 19 of FMT's Reimbursement Agreement specifically distinguishes between Hilton's actions under the Reimbursement Contracts, on the one hand, and Hilton's affiliate's actions under the BAMA regarding management of the Hotel, on the other hand. *See supra* § I.B. The BAMA includes a parallel provision drawing this same distinction. Section 2.3.6 of the BAMA states:

> Owner acknowledges and agrees that (i) **the actions taken by Manager [Signia Hotel Management LLC] under this Agreement are independent from the actions taken by Manager or its Affiliate under the Credit Enhancement (the "Hilton Guarantor")**, (ii) **that the actions taken by the Hilton Guarantor in connection with the Credit Enhancement (whether or not Hilton Guarantor is the Manager or its Affiliate) are independent from the actions taken by Manager under this Agreement**, (iii) **no action by the Hilton Guarantor under the Credit Enhancement (whether or not the Hilton Guarantor is the Manager or its Affiliate) will be imputed to Manager under this Agreement, and vice versa**, and (iv) Owner expressly waives any fiduciary duties (of agency or otherwise) that might be imposed, implied or imputed to Manager as a result of any actions taken by the Hilton Guarantor under the Credit Enhancement (whether or not the Hilton Guarantor is the Manager or its Affiliate) and acknowledges that the Hilton Guarantor (even if Manager) will, and is authorized to, act solely in its own

---

[5] Defendants cite one case, *Archstone Development LLC v. Renval Construction LLC*, 67 N.Y.S.3d 7 (App. Div. 2017), to support their contrary position that, because the BAMA is the "master agreement," the BAMA's dispute resolution provision applies to the Reimbursement Contracts. Mot. at 10–11. But *Archstone* is inapposite. There, the plaintiff argued that a construction contract's mediation provision did not apply because a "separate and distinct" contract gave rise to the dispute. The court rejected this argument because the allegedly "separate and distinct" contract had been "*superseded by* the construction agreement pursuant to the latter agreement's merger clause." 67 N.Y.S.3d at 8 (emphasis added). Here, by contrast, Defendants do not and cannot contend that the BAMA "superseded" the Reimbursement Contracts. Just the opposite: Defendants do not dispute that the Reimbursement Contracts are valid, binding contracts. *See* Mot. at 3.

best interest with respect to the Credit Enhancement and will have no duties whatsoever to Owner with respect to the Credit Enhancement.

Ex. A § 2.3.6 (emphasis added). The "Credit Enhancement[s]" refer to the Reimbursement Contracts, as Defendants concede. *See* Mot. at 2–3; *see also* Ex. A at 4 (defining "Credit Enhancement[s]").

The express distinction between the BAMA and the Reimbursement Contracts evidences the parties' clear intent to separate Hilton's rights and actions as a guarantor of the JPMorgan loan from the Hilton affiliate's rights and actions regarding the operation of the Signia Hotel. *See* Ex. A § 2.3.6; Ex. B § 19. Therefore, even if Defendants are correct (they are not) that the BAMA and Reimbursement Contracts are "part of a single integrated transaction [and] must be construed together," Mot. at 11, such a construction does not authorize overriding the contracts' unambiguous and express separation of the BAMA and the Reimbursement Contracts, *see, e.g.*, *Shahmohamad v. Shahmohmamad*, 228 N.Y.S.3d 384, 386 (App. Div. 2025) ("[A]greements are construed in accord with the parties' intent.").

**CONCLUSION**

For the foregoing reasons, this Court should deny Defendants' motion to dismiss.[6]

---

[6] Alternatively, should the Court credit Defendants' position and override the contracts' separateness, the Court should stay this action for 30 days while the parties engage in mediation. Courts routinely grant stays when requiring parties to engage in mediation. *See, e.g.*, *Kane Builders S & D, Inc. v. Md. CVS Pharm., LLC*, 2013 WL 2948381, at *3 (D. Md. June 13, 2013) ("[G]ranting a stay to require the parties to mediate is more appropriate than dismissal because it puts the parties in the position that they bargained for, and results in little or no prejudice to either party."); *Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1241 (11th Cir. 2008) ("[G]ranting a stay to permit mediation (or to require it) will often be appropriate.").

If the Court instead grants Defendants' motion, the action must be dismissed **without prejudice** to refiling—as Defendants concede. *See* Mot. at 14 (Defendants stating: "Dismissal *without prejudice* is the proper remedy." (emphasis added)); *see also Hometown Servs., Inc. v. EquityLock Sols., Inc.*, 2014 WL 4406972, at *3 (W.D.N.C. May 8, 2014) ("Plaintiff may refile this action if mediation fails to resolve this dispute.").

Dated: January 16, 2026

Respectfully submitted,

By: */s/ Craig C. Reilly*

Craig C. Reilly
VSB # 20942
429 N. St. Asaph Street
Alexandria, VA 22314
Telephone:  (703) 549-5354
Fax:  (703) 549-5355
Email:  craig.reilly@ccreillylaw.com

Andrew S. Tulumello (pro hac vice)
Chantale Fiebig (pro hac vice)
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Telephone:  (202) 682-7000
Facsimile:  (202) 857-0940
Email:  drew.tulumello@weil.com
Email:  chantale.fiebig@weil.com

*Counsel for Plaintiff*
*Hilton Worldwide Holdings Inc.*