IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| HILTON WORLDWIDE HOLDINGS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 1:25-cv-2104-LMB-IDD |
| | ) | |
| SAM HIRBOD, FMT SJ HOLDINGS LLC, AND | ) | |
| EAGLE CANYON HOLDINGS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)

Defendants Sam Hirbod, FMT SJ Holdings LLC, and Eagle Canyon Holdings, LLC (collectively, "Defendants") respectfully submit this reply brief in further support of their motion to dismiss Plaintiff Hilton Worldwide Holdings Inc.'s ("Hilton") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

## INTRODUCTION

Hilton does not dispute that it commenced this action without attempting mediation. Instead, it advances a series of formalistic arguments designed to avoid the mandatory pre-suit mediation provision governing the contractual relationship from which its claims arise. None has merit. Under New York law, parties may not plead around bargained-for dispute-resolution requirements by suing under a related agreement executed as part of the same transaction. The BAMA established the Hilton-branded management relationship and the credit-enhancement structure that made Hilton's guaranties, and Defendants' reimbursement obligations, necessary. Because Hilton's claims arise directly from that integrated relationship, they are subject to the BAMA's mandatory mediation requirement. The Complaint should therefore be dismissed without prejudice to allow the parties to mediate.

**ARGUMENT**

**I.      The Reimbursement Contracts Do Not Foreclose Defendants' Argument that Hilton Was Required to Engage in Pre-Suit Mediation.**

Hilton argues that it was free to commence this action without first engaging in mediation because the Reimbursement Contracts contain no express mediation requirement, include merger clauses, and contain guaranty waivers that purportedly eliminate any mediation-based defense. None of these arguments withstands scrutiny under New York law.

**A.      Pre-Suit Mediation Is Required Because the Dispute "Arises Out of or Relates to" the BAMA-Created Relationship.**

Hilton first contends that because the Reimbursement Contracts contain provisions addressing jurisdiction, jury waivers, and remedies, but do not expressly require mediation, it was entitled to sue immediately. That argument misunderstands both the function of those provisions and settled New York law. Forum-selection, jury-waiver, and remedies clauses govern *where* and *how* litigation may proceed once litigation is permitted; they do not negate or supersede a contractual condition precedent governing *whether* litigation may be commenced in the first place. New York courts routinely enforce such provisions alongside mandatory mediation or arbitration clauses, harmonizing the provisions so that they do not intrude upon each other. *See, e.g., Smith Barney Shearson Inc. v. Sacharow*, 91 N.Y.2d 39, 49 (1997). Accepting Hilton's position would improperly convert standard litigation-adjacent provisions into implied waivers of bargained-for mediation obligations—an inference New York courts do not draw absent clear and unmistakable language. *See Navillus Tile, Inc. v. Bovis Lend Lease LMB, Inc.,* 74 A.D.3d 1299, 1302 (2d Dep't 2010).

Critically, the Reimbursement Contracts cannot be read in isolation. All parties, including Hilton, were aware of the BAMA and executed the Reimbursement Contracts as part of, and in

furtherance of, the BAMA-governed relationship. *See* Dkt. 16-1, ¶ 9. In that context, the absence of a standalone mediation clause in the Reimbursement Contracts does not negate the applicability of the BAMA's mandatory mediation requirement.

New York law is clear that "all writings which form part of a single transaction and are designed to effectuate the same purpose [must] be read together, even though they were executed on different dates and were not all between the same parties." *This Is Me, Inc. v. Taylor*, 157 F.3d 139, 143 (2d Cir. 1998); *Nau v. Vulcan Rail & Constr. Co.*, 286 N.Y. 188, 197 (1941). Applying that principle, courts consistently hold that dispute-resolution provisions in one agreement govern disputes arising from closely related agreements executed as part of an integrated transaction. *See, e.g., TVT Recs. v. Island Def Jam Music Grp.*, 412 F.3d 82, 90 (2d Cir. 2005) (agreements read together where intended to effectuate a single transaction); *In re HBL SNF, LLC*, 2022 WL 1612221, at *16 (Bankr. S.D.N.Y. May 20, 2022) (agreements "meant to be read as a cohesive, integrated agreement"); *Royal Palm Senior Invs., LLC v. Carbon Cap. II, Inc.*, 2009 WL 1941862, at *12 (S.D.N.Y. July 7, 2009) (guaranty closely interrelated with loan documents).

Consistent with that framework, New York courts construe dispute-resolution clauses covering claims "arising out of or relating to" an agreement broadly, encompassing all disputes that bear a significant relationship to the agreement or the relationship it creates. *See, e.g., Archstone Dev. LLC v. Renval Constr. LLC*, 156 A.D.3d 432, 433 (1st Dep't 2017).[1]

---

[1] Plaintiff's attempt to distinguish *Archstone* is unavailing. Although the court noted that one agreement had been superseded by another, *Archstone* did not announce a rule limited to supersession or merger clauses. Rather, the court's holding rested on the broader principle that contracts executed as part of a single transaction and relating to the same underlying relationship must be read together, and that a party may not avoid a contractual condition precedent by characterizing a dispute as arising under a related agreement. Nothing in *Archstone* suggests that integration principles apply only where one agreement formally supersedes another, and accepting Plaintiff's narrow reading would permit parties to evade bargained-for dispute-resolution provisions through pleading formalism in contravention of New York law.

That standard is easily met here. Hilton's reimbursement and guaranty claims arise directly from the relationship created by the BAMA. *See* Dkt. 16-1, ¶ 9. The guaranties Hilton provided, and the reimbursement and backstop guaranties Defendants executed, were expressly characterized as "Credit Enhancements" connected to the BAMA and were required by lenders as a condition of allowing a Hilton affiliate to manage the Hotel. *Id.*, ¶¶ 9-11, 13-14. Absent the BAMA, there would have been no Hilton guaranty, no reimbursement obligations, and no guaranties for Hilton to enforce. *See id.*

Hilton does not meaningfully dispute these facts. Instead, it argues that mediation is unnecessary because it chose to sue under the Reimbursement Contracts rather than under the BAMA itself. New York law forecloses that approach. A party may not evade a bargained-for dispute-resolution requirement through artful pleading that elevates form over substance. *See Tourtellot v. Harza Architects*, 55 A.D.3d 1096, 1098 (3d Dep't 2008); *HMS Holdings Corp. v. Moiseenko*, 29 N.Y.S.3d 847, *5 (N.Y. Sup. 2015). Where, as here, a dispute is rooted in an integrated contractual relationship, the governing pre-suit mediation provision applies.

**B.** **The Merger or Integration Clauses in the Reimbursement Contracts Do Not Foreclose Application of the BAMA's Pre-Suit Mediation Requirement.**

Hilton next argues that the merger or integration clauses in the Reimbursement Contracts bar application of the BAMA's mediation provision. New York law disagrees. The Court of Appeals has expressly held that where "an antecedent agreement has no effect to vary, contradict or supplement the terms of a later agreement containing the general merger clause, the prior agreement remains enforceable." *Primex Int'l Corp. v. Wal-Mart Stores, Inc.,* 89 N.Y.2d 594, 600 (1997). Applying that principle, *Primex* enforced arbitration provisions contained in earlier agreements notwithstanding a merger clause in a later agreement, explaining that where the earlier

4

dispute-resolution provisions do not alter the substantive terms of the later agreement, both agreements may be given effect without frustrating the parties' intent. *Id.* at 601.

That reasoning applies here. Hilton does not contend (nor could it) that the Reimbursement Contracts vary from or add to the terms of the BAMA. To the contrary, the agreements were executed contemporaneously as part of a single business transaction. In those circumstances, the presence of integration clauses does not preclude the agreements from being construed together or foreclose enforcement of the BAMA's pre-suit mediation requirement. *See id.* at 601-602.

Hilton's reliance on *Bordonaro v. E.C. Provini Co., Inc.,* No. 157409/2020, 2025 WL 290430, at *3 (N.Y. Sup. Ct. Jan. 24, 2025) is misplaced. *Bordonaro* addressed whether a subcontractor could be bound to a substantive indemnification obligation contained in a separate prime contract through incorporation by reference. *Id.* The court rejected that effort because indemnification provisions are strictly construed, and the subcontract contained a clear entire-agreement clause negating incorporation of outside indemnity obligations. *Id.* at *2-3. The case did not involve, and did not address, the enforceability of a mandatory pre-suit dispute-resolution requirement triggered by the nature of a dispute arising from an integrated contractual relationship.

Here, Defendants do not contend that the BAMA's mediation provision was incorporated into the Reimbursement Contracts or that it alters their substantive terms. Rather, Defendants rely on the settled rule that broadly worded dispute-resolution provisions apply to disputes arising out of the relationship that gave rise to the parties' agreements and may not be evaded through artful pleading. *Bordonaro* does not undermine that principle and is therefore inapposite.

Further, Hilton cannot rely on *Duration Municipal Fund, L.P. v. J.P. Morgan Securities Inc.*, 899 N.Y.S.2d 59 (Sup. Ct. 2009), *aff'd*, 908 N.Y.S.2d 684 (App. Div. 2010). *Duration* involved an attempt to impose substantive contractual duties on a defendant under an agreement

that did not govern the conduct at issue, where those duties were expressly allocated to separate agreements with different parties containing exclusive entire-agreement provisions. *Id.* at *7. The court dismissed the claim because the defendant had no underlying contractual obligation, express or implied, under the contract sued upon. *Id.* at *8-9.

This case presents the opposite posture. Defendants do not seek to impose new substantive obligations on Hilton or to reallocate liability among agreements. Rather, they invoke a mandatory pre-suit mediation requirement that is triggered by the nature of the dispute and the integrated relationship that gave rise to the Reimbursement Contracts. *Duration* did not address, and does not undermine, the well-established principle that broadly worded dispute-resolution provisions governing a contractual relationship apply to disputes arising from that relationship and may not be avoided by pleading under a related agreement. *See, e.g., Primex Int'l Corp.,* 89 N.Y.2d at 600; *Archstone Dev. LLC*, 156 A.D.3d at 433.

Nor does the FMT Reimbursement Contract's statement that actions under the loan documents are "independent" from actions under the management agreement alter the conclusion. That provision addresses operational independence and non-imputation of conduct; it does not purport to waive or supersede the BAMA's dispute-resolution clause or authorize litigation in violation of it. Accordingly, nothing in the Reimbursement Contracts, or in the cases Hilton cites, precludes application of the BAMA's mandatory pre-suit mediation requirement to this dispute.

**C.     Eagle Canyon and Hirbod Have Not Waived Any Mediation-Based Defense.**

Hilton next argues that Eagle Canyon and Hirbod broadly waived defenses to Hilton's reimbursement claims in three of the four Reimbursement Contracts,[2] and that those waivers necessarily encompass any mediation-based defense. That argument misreads both the waiver language and New York law. The cited provisions address traditional guaranty defenses, such as notice, presentment, protest, or challenges to the enforceability of the underlying obligations, as well as risk-allocation defenses arising from reliance on representations or changes in circumstances. None of these provisions speaks to, much less clearly and unmistakably waives, a contractual condition precedent governing *when* litigation may be commenced.

Under New York law, contractual rights may be waived only "if they are knowingly, voluntarily and intentionally abandoned." *Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.,* 7 N.Y.3d 96, 104 (2006). Waiver "should not be lightly presumed" and must be based on "a clear manifestation of intent" to relinquish a contractual protection. *Gilbert Frank Corp. v. Fed. Ins. Co.*, 70 N.Y.2d 966, 968 (1988); *S. & E. Motor Hire Corp. v. New York Indem. Co.,* 255 N.Y. 69, 72 (1930). A "waiver is not created by negligence, oversight, or thoughtlessness, and cannot be inferred from mere silence." *Peck v. Peck,* 232 A.D.2d 540, 540 (2d Dep't 1996); *see also Cmty. Counseling & Mediation Servs. v. Chera,* 95 A.D.3d 639, 640 (1st Dep't 2012).

Consistent with these principles, New York courts construe waivers narrowly and do not infer the waiver of procedural rights, particularly bargained-for dispute-resolution requirements, absent clear and specific language directed to that right. *See Navillus Tile,* 74 A.D.3d at 1302 ("[I]t

---

[2] Hilton does not claim that the Reimbursement Agreement between FMT and Plaintiff has any such waiver clause, and it does not. *See* Dkt. 16-3. In fact, the parties in that contract expressly agreed that "nothing herein shall constitute a waiver or release or otherwise affect or impact any rights of Manager under the Management Agreement." *Id.*, ¶ 19.

would be unfair to infer such a significant waiver on the basis of anything less than a clear indication of intent."); *see, e.g., Scherer v. Schuler Custom Homes Const., Inc.,* 2004 WY 109, ¶ 16, 98 P.3d 159, 163 (Wyo. 2004) ("In deference to our policy of encouraging arbitration, we will not lightly infer a claim that alternative dispute resolution was waived.").

Nothing in the waiver provisions reflects a clear intent to relinquish the BAMA's mandatory pre-suit requirement, which was executed contemporaneously as part of the same transaction. Reading the waivers to encompass that requirement would render the BAMA's mediation provision superfluous, contrary to settled principles of contract interpretation. *See Helmsley-Spear, Inc. v. New York Blood Ctr., Inc.,* 257 A.D.2d 64, 69 (1st Dep't 1999); *Suffolk Cnty. Water Auth. v. Vill. of Greenport,* 21 A.D.3d 947, 948 (2d Dep't 2005).

In any event, a mandatory pre-suit mediation requirement does not operate as a defense to liability or limit a guarantor's substantive obligations. It governs only the sequencing and timing of litigation. Accepting Hilton's interpretation would improperly transform standard guaranty waivers into implicit authorizations to bypass contractual conditions precedent.

**II.     Hilton's Narrow Reading of the Mediation Clause in the BAMA Conflicts with Its Text and Structure.**

**A.     The BAMA's Mediation Clause Applies to This Dispute.**

Hilton argues that the mediation clause applies only to disputes between the formal signatories to the BAMA. The text does not support that reading. The clause applies to disputes "arising out of or relating to" the agreement or the relationship it creates—language that is deliberately broad and focuses on the nature of the dispute, not the identity of the named parties. Hilton's claims arise directly from the BAMA-created relationship. The guaranties Hilton provided, and the reimbursement and backstop obligations Defendants undertook, were expressly structured as "Credit Enhancements" required by lenders as a condition of permitting a Hilton

affiliate to manage the Hotel. *See* Dkt. 16-1, ¶ 9. Hilton's rights under the Reimbursement Contracts exist only because the BAMA authorized and structured that relationship. *See id.* Having chosen to enforce those rights, Hilton cannot disavow the dispute-resolution framework governing the relationship from which they arise.

Moreover, the text of Article 19 itself confirms that the dispute-resolution framework was not limited to disputes involving only the formal signatories. Section 19.3.2 expressly authorizes immediate litigation to protect the proprietary information of "Manager or its Affiliates," demonstrating that affiliate-related disputes were squarely within the contemplation of the parties when they drafted the mediation requirement and its exceptions. *See* Dkt. 16-2, BAMA § 19.3.2. Having expressly referenced Affiliates in the dispute-resolution article, the parties cannot plausibly be said to have intended mediation to turn solely on formal signatory status rather than on the nature of the dispute arising from the BAMA-governed relationship.

Hilton's reliance on *Stefatos v. Fred-Doug Manager, LLC,* 116 A.D.3d 419 (1st Dep't 2014), and the general proposition that "a contract cannot bind a nonparty," is misplaced. *Stefatos* addressed whether a defendant could be held liable for breach of a contract to which it was not a party. It did not involve the application of a dispute-resolution provision, much less a mandatory pre-suit mediation requirement triggered by an integrated contractual relationship.

Hilton similarly cannot apply *Berezovskaya v. Deutsche Bank Nat'l Trust Co.*, No. 12 CV 6055 KAM, 2014 WL 4471560, at *4 (E.D.N.Y. Aug. 1, 2014). That case addressed whether a borrower (who was neither a party to nor an intended beneficiary of a pooling and servicing agreement ("PSA")) had standing to sue for damages or declaratory relief based on alleged violations of the PSA's transfer provisions. *Id.* at *5. The court held she did not, because she sought to enforce substantive rights under the PSA and to invalidate transactions governed exclusively by

9

that agreement. *Id.* at \*8. *Berezovskaya* did not involve the enforcement of a dispute-resolution provision, did not concern a condition precedent to suit, and did not address whether parties to related agreements could require compliance with a mandatory pre-suit mediation requirement as a threshold matter before litigation proceeds.

Here, Defendants do not seek to enforce substantive obligations under the BAMA or obtain relief for its breach. They invoke the BAMA solely to enforce a procedural condition precedent governing the sequencing of litigation arising from an integrated contractual relationship. *Berezovskaya*'s standing analysis, rooted in Article III injury, has no application in that context.

Hilton's attempt to avoid the BAMA's mediation requirement by dismissing direct-benefits estoppel is also unavailing. As Hilton acknowledges, the doctrine is most commonly applied in the arbitration context, but its animating principle is broader: a party may not knowingly accept the benefits of a contract while simultaneously repudiating the procedural obligations that govern disputes arising from that same relationship. Whether framed as estoppel, implied consent, or prevention of artful pleading, New York courts apply this principle to prevent parties from selectively invoking contractual benefits while disavowing bargained-for dispute-resolution mechanisms.

In any event, Hilton mischaracterizes both the doctrine and the record. Direct-benefits estoppel does not require that a nonsignatory be the formal payee of fees under the agreement; it requires that the nonsignatory knowingly exploit and receive benefits flowing directly from the contractual relationship. Here, the BAMA was the foundational agreement that permitted a Hilton-branded hotel to be operated, managed, and held out to the market under Hilton's brand and systems. Hilton's reimbursement, guaranty, and backstop arrangements, which were executed contemporaneously and expressly as part of that same transaction, existed only because the BAMA

authorized and structured that relationship. Absent the BAMA, there would have been no Hilton management role, no Hilton guaranties, and no reimbursement obligations for Hilton to enforce.

Hilton's attempt to confine the BAMA's benefits to NEX SJ LLC and Signia Hotel Management LLC elevates form over substance. The New York Court of Appeals has explained that "[t]he guiding principle is whether the benefit gained by the nonsignatory is one that can be traced directly to the agreement containing the arbitration clause." *Belzberg v. Verus Invs. Holdings Inc.,* 21 N.Y.3d 626, 633 (2013).

Here, the benefits Hilton received are traceable directly to the BAMA, which authorized and structured the relationship that made Hilton's guaranties and reimbursement rights possible. *See* Dkt. 16-1, ¶¶ 9-11, 13-14. Although Hilton Worldwide Holdings Inc. is not a named party to the BAMA, it knowingly derived substantial and direct benefits from the BAMA-created relationship. The BAMA established and governed an integrated Hilton-branded management relationship that conferred substantial economic, operational, branding, and proprietary benefits on Hilton-related entities, including the right to deploy Hilton marks, systems, and confidential know-how in the operation of the Hotel, with all resulting goodwill accruing to Manager or its Affiliates. *See* Dkt. 16-2, BAMA at 1, 2, 11 (definitions of "Affiliates," "Brand," "Brand Standards," and "Marks"), § 11.2.6 (all goodwill arising from use of the Marks inures to Manager or its Affiliates), § 13.1.1 (authorizing Manager, without Owner consent, to assign or delegate its rights and obligations under the Agreement to its Affiliates); § 13.2.1 (permitting Owner, subject to specified conditions, to assign the Agreement and transfer ownership of the Hotel to its Affiliates); § 22.3 (permitting Manager and its Affiliates to use confidential Hotel operational information in the operation of other hotels); § 22.12 (permitting performance of the Agreement by Manager's Affiliates and treating such Affiliates as "Manager" for purposes of the Agreement);

11

§ 10.1.7 (requiring insurance policies to name Manager's Affiliates required by the Brand Standards as additional insureds and to include waivers of subrogation).

The BAMA also confers direct economic benefits on Hilton-related entities. Section 5.1.3 expressly authorizes Manager or its Affiliates to charge and retain Services Charges for providing centralized brand, system, technology, and corporate services to the Hotel, including recovery of development and promotion costs, system and technology expenses, overhead, and compensation and benefits of corporate personnel, and permits the collection of ancillary revenues related to those Services from third parties. *See* Dkt. 16-2, BAMA § 5.1.3. These provisions authorize Hilton-related entities to recover costs and derive ongoing economic value directly from the BAMA-governed relationship, not merely incidental or reputational benefits.

In addition, the BAMA expressly contemplates and requires "Credit Enhancements" in favor of the Hotel's lenders, including guaranties provided by Hilton or its Affiliates, as a condition of permitting the Hilton-branded management relationship to exist at all. *See id.* at 4 (definition of "Credit Enhancement"); § 2.3.6 (expressly recognizing the role of a Hilton affiliate as the "Hilton Guarantor," authorizing actions taken in connection with Credit Enhancements, and confirming that such actions are contemplated within the BAMA framework). Hilton's guaranty, reimbursement, and backstop rights were therefore not collateral to the BAMA but were created solely to support and protect the BAMA-governed relationship and the benefits flowing from it.

Taken together, the BAMA authorizes Hilton affiliates, including Plaintiff, to perform under the Agreement, deploy Hilton systems and intellectual property, recover costs and ancillary revenues, and receive insurance and liability protections. Those are the types of direct, bargained-for benefits New York courts recognize as sufficient to support direct-benefits estoppel where a nonsignatory knowingly exploits and receives benefits flowing directly from the contractual

relationship giving rise to the dispute. *See, e.g., HRH Const. LLC v. Metro. Transp. Auth.,* 33 A.D.3d 568, 569 (1st Dep't 2006); *Revis v. Schwartz*, 192 A.D.3d 127, 144-45 (2d Dep't 2020), *aff'd,* 38 N.Y.3d 939 (2022); *see also Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.,* 9 F.3d 1060, 1064 (2d Cir. 1993).

Nor does Hilton's reliance on cases rejecting estoppel based solely on corporate affiliation carry the day. Defendants do not rely on Hilton's affiliate status alone. They rely on Hilton's knowing exploitation of the contractual framework that made its guaranties and reimbursement claims possible. Cases such as *Gater Assets Ltd. v. AO Moldovagaz,* 2 F.4th 42, 68–69 (2d Cir. 2021) and *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC,* 268 F.3d 58, 62 (2d Cir. 2001), reject estoppel where a nonsignatory's connection is merely tangential; they do not shield a party that has affirmatively invoked rights arising from an integrated contractual relationship from complying with its dispute-resolution provisions.

If accepted, Hilton's argument would permit any party to accept the benefits of a complex, multi-agreement transaction while evading mandatory mediation simply by suing under a related agreement with different signatories. New York law does not permit such an end-run around bargained-for dispute-resolution requirements.

## B.      Hilton's Claims Fall Within the Scope of the BAMA's Mediation Provision.

Hilton's contention that its claims fall outside the scope of the BAMA's mediation provision depends on formal distinctions that New York law does not recognize. Defendants do not contend that Hilton is a "Party" to the BAMA or seek to impose substantive liability under it. They invoke the mediation provision solely as a procedural condition precedent governing litigation arising from the integrated relationship the BAMA created.

The mediation provision's reference to "the Parties" does not limit its scope in the manner Hilton suggests. Section 19.2.1 regulates when litigation may be commenced; it does not purport to define the universe of disputes subject to mediation by reference only to formal signatory status. Nor does the absence of the defined term "Related Parties" narrow the mediation obligation. That term is used elsewhere in the BAMA to allocate substantive rights and liabilities. By contrast, dispute-resolution provisions serve a gatekeeping function and are construed broadly to encompass disputes connected to the contractual relationship they govern.

Hilton cites no authority holding that a party may evade a broadly worded ADR provision governing a contractual relationship simply by pleading under a related agreement executed as part of the same transaction. Its cursory footnote does not meaningfully distinguish the New York cases Defendants cited in their moving papers, which apply the well-established principle that dispute-resolution provisions are construed broadly to encompass disputes having a significant relationship to the agreement or the relationship it creates.

Hilton's capitalization argument fares no better. The mediation provision's use of the lowercase term "claim" does not evidence an intent to exclude disputes arising from related agreements executed as part of the same transaction, particularly where the provision is framed broadly and addresses the commencement of litigation. Finally, Hilton's attempt to characterize the BAMA and the Reimbursement Contracts as wholly independent ignores the transactional reality: the BAMA authorized the Hilton-branded management relationship and the credit-enhancement framework that made Hilton's guaranties and Defendants' reimbursement obligations necessary. *See* Dkt. 16-1, ¶ 9. Enforcing the mediation requirement does not impair Hilton's reimbursement remedy; it simply enforces the parties' agreed sequencing of dispute resolution.

**C.    The BAMA and Reimbursement Contracts Must Be Read Together, and Doing So Requires Pre-Suit Mediation.**

As explained above, Hilton's claims arise from an integrated transaction centered on the BAMA-governed management relationship. Reading the BAMA and the Reimbursement Contracts together, as New York law requires for agreements executed as part of a single transaction, confirms, rather than contradicts, that conclusion.

Hilton relies heavily on *Snyder v. Wells Fargo Bank, N.A.* to support its argument that the BAMA and Reimbursement Contracts should be treated as completely separate and unconnected agreements. No. 11 CIV. 4496 SAS, 2011 WL 6382707, at *4 (S.D.N.Y. Dec. 19, 2011). *Snyder* involved two related but independent agreements under which the parties' rights, obligations, and damages could be fully adjudicated without reference to each other. The court emphasized that the contracts were "not intertwined or integral," that the claims under each could "be pursued independently," and that the damages were distinct. 2011 WL 6382707, at *4-5.

This case presents the opposite circumstance. Hilton's reimbursement claims do not arise from a parallel or stand-alone agreement; they arise from a credit-enhancement structure that existed solely to support the BAMA-governed management relationship. The Reimbursement Contracts were executed contemporaneously, expressly contemplated by the BAMA, and dependent on that relationship continuing to exist. Unlike in *Snyder*, Hilton's claims cannot be adjudicated without reference to the BAMA-created relationship that gave rise to them. *Snyder* therefore does not bar enforcement of the BAMA's mandatory pre-suit mediation requirement.

Moreover, *Snyder*'s analysis was driven by the arbitration context, which requires clear assent because it entails a waiver of the judicial forum. A mandatory pre-suit mediation requirement raises no such concern: it preserves all claims and remedies and merely regulates the timing of suit. That distinction further underscores why *Snyder* does not control here.

Nor do the Reimbursement Contracts' merger or "entire agreement" clauses change the analysis. As *Primex* makes clear, such clauses prevent prior or collateral agreements from varying substantive contract terms; they do not preclude courts from construing contemporaneous agreements together where, as here, they form part of a unified transaction and do not conflict. That principle applies with particular force to procedural provisions, such as dispute-resolution mechanisms, that regulate the timing and forum of litigation rather than substantive performance.

Finally, Hilton's emphasis on provisions distinguishing its role as guarantor from its affiliate's role as manager does not sever the transactional linkage between the BAMA and the credit enhancements. Those provisions allocate duties and liabilities; they do not reflect an intent to permit litigation arising from the integrated transaction to proceed without compliance with the BAMA's mandatory pre-suit mediation requirement.

In short, even accepting that the BAMA and the Reimbursement Contracts are distinct agreements with different parties, construing them together, as New York law requires, reinforces the conclusion that this dispute is subject to mandatory pre-suit mediation.

## CONCLUSION

Hilton's Complaint was filed prematurely. Courts routinely dismiss actions brought in violation of mandatory pre-suit mediation provisions, without prejudice, until the contractual condition precedent is satisfied. Defendants have consistently expressed their willingness to participate in mediation as required by the BAMA. Allowing this action to proceed would undermine the parties' agreed dispute-resolution framework. The Complaint should be dismissed.

16

Dated: January 26, 2026

Respectfully submitted,

**ORRICK, HERRINGTON &
SUTCLIFFE LLP**

_____*/s/ Edward H. Williams II*_____
Edward H. Williams II (VSB No. 88102)
John B. Williams III (*pro hac vice*)
edward.williams@orrick.com
jwilliams@orrick.com
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 339-8400
Facsimile: (202) 339-8500

**GERAGOS & GERAGOS, APC**

Mark Geragos (*pro hac vice*)
mark@geragos.com
644 South Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 625-3900
Facsimile: (213) 232-3255

Tina Glandian (*pro hac vice*)
tina@geragos.com
256 5th Avenue
New York, NY 10001
Telephone: (213) 625-3900
Facsimile: (213) 232-3255

*Attorneys for Defendants Sam Hirbod,*
*FMT SJ Holdings LLC, and*
*Eagle Canyon Holdings, LLC*

# CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 26, 2026, I electronically filed the foregoing Defendants' Reply Brief in Further Support of Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) using the CM/ECF system and served electronically on all registered users.

Dated: January 26, 2026

    */s/ Edward H. Williams II*
Edward H. Williams II (VSB No. 88102)
edward.williams@orrick.com
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 339-8400
Facsimile: (202) 339-8500