UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA – ALEXANDRIA DIVISION

| | |
|---|---|
| HILTON WORLDWIDE HOLDINGS INC., <br><br> Plaintiff, <br><br> v. <br><br> SAM HIRBOD, FMT SJ HOLDINGS LLC, AND EAGLE CANYON HOLDINGS, LLC, <br><br> Defendants. | Case No. 1:25-cv-02104 |

**PLAINTIFF HILTON WORLDWIDE HOLDINGS INC.'S MEMORANDUM
IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER**

Plaintiff Hilton Worldwide Holdings Inc. ("Hilton") filed this action because Defendants Sam Hirbod ("Hirbod"), FMT SJ Holdings LLC ("FMT"), and Eagle Canyon Holdings, LLC ("ECH") violated ironclad contractual obligations to reimburse Hilton in four loan guarantees (the "Reimbursement Contracts"). The Defendants defaulted on a loan in June 2024; Hilton paid instead; and under the Reimbursement Contracts, the Defendants now must re-pay Hilton. This straightforward case begins and ends with the clear and unambiguous language in the Reimbursement Contracts. For example, in Defendant FMT's Reimbursement Contract, FMT "absolutely, irrevocably and unconditionally agrees to reimburse the Hilton Parties upon demand." Ex. 1 ¶ 3. Under governing New York law, "guaranties that are 'absolute and unconditional'" "obligat[e] the guarantor to payment *without recourse to any defenses or*

*counterclaims.*" *Epic W14 LLC v. Malter*, 178 N.Y.S.3d 442, 443 (1st Dep't 2022) (emphasis added).[1]

To deflect from their contractual violations, and in a transparent attempt to harass Hilton, Defendants recently noticed the deposition of Kevin Jacobs, Hilton's Chief Financial Officer.  Mr. Jacobs is not a signatory to the Reimbursement Contracts and did not personally negotiate the Reimbursement Contracts.  Nevertheless, Defendants propose to depose Mr. Jacobs on discussions, after the Defendants defaulted, between Hilton and Hirbod about an unconsummated rescue refinancing that Defendants (and their affiliates) sought to obtain from a third party (the "Third-Party Refinancing"), even though Mr. Jacobs was not personally involved in those discussions either.

Defendants' attempt to depose Mr. Jacobs is improper.  Hilton and Defendants executed four Reimbursement Contracts that are clear on their face.  Defendants' liability and defenses turn on the plain meaning and application of those contracts—not on post-default events.  Moreover, to avoid this *precise* scenario, before engaging in any discussions with Defendants about the Third-Party Refinancing, Hilton required Defendants to execute a contract—***the Pre-Negotiation Agreement***—declaring *any* fact or event relating to the Third-Party Refinancing non-referenceable any later litigation.  Hilton knew that parties already in default typically blame counterparts when they try and fail a rescue refinancing.  Under that agreement alone, a deposition of Mr. Jacobs should not proceed.

Finally, the concerns that animate the apex doctrine against burdensome and duplicative depositions of senior executives are present here.  Mr. Jacobs is a high-level executive with no

---

[1] New York law governs the Reimbursement Contracts in this action.  *See* Ex. 1 at 7 (§ 10); Ex. 2 at 8 (§ 25); Ex. 3 at 8 (§ 24); Ex. 4 at 7 (§ 24); Dkt. No. 39 ("Answer") ¶ 14 (admitting that the agreements all "contain a New York choice-of-law clause").

unique or special knowledge of facts relevant to this litigation.  Moreover, even if Mr. Jacobs has some general knowledge of relevant facts, Defendants can obtain that information from the three other Hilton executives whom they have already noticed for deposition.  Good cause thus supports issuing a protective order to prohibit Defendants from deposing Mr. Jacobs.

## BACKGROUND

### I.    Hilton Sues Defendants for Straightforward Breaches of Four Guarantees.

This case arises from Defendants' undisputed failure to reimburse Hilton more than $29.3 million based on unambiguous, absolute, and unconditional loan guarantees between Hilton and Defendants.  In 2018, Hirbod (through an affiliated LLC) borrowed approximately $173 million from a mortgage lender to purchase a luxury hotel in San Jose, California.  Answer ¶ 15.  In 2021, the Hirbod-affiliated borrower declared bankruptcy.  *Id.* ¶ 16.  Through the bankruptcy proceedings, Hirbod selected Hilton to manage the hotel, which was rebranded as the Signia by Hilton San Jose.  *Id.* ¶ 17.

To facilitate ownership of the hotel after bankruptcy, Hirbod needed tens of millions of dollars in additional financing and sought a $25 million mezzanine loan (the "Mezzanine Loan") from JPMorgan Chase Bank, N.A. ("JPMorgan").  Answer ¶¶ 18–20.  JPMorgan would provide the Mezzanine Loan, however, only if Hilton guaranteed it.  Dkt. 1 ("Compl.") ¶¶ 18–20.  Hilton agreed to guarantee the Mezzanine Loan only after Defendants executed four contractual guarantees, the Reimbursement Contracts, to swiftly and fully reimburse Hilton if Hilton had to purchase the Mezzanine Loan in the event of Defendants' default.  *Id.* ¶ 20; Answer ¶¶ 66, 79, 92, 106.  The Reimbursement Contracts, signed in November 2021 and July 2023, unconditionally obligate Defendants to reimburse Hilton if Hirbod defaulted on the Mezzanine Loan and Hilton purchased it.  Exs. 1–4; Answer ¶¶ 25–35 (admitting that the Reimbursement Contracts contain these obligations).

3

In June 2024, Hirbod defaulted on the Mezzanine Loan, and Hilton purchased the Mezzanine Loan from JPMorgan for more than $29 million (the amount of the Loan had since been upsized by $4.3 million). Compl. ¶ 39; Answer ¶ 39. Hilton's purchase triggered Defendants' contractual obligations to promptly reimburse Hilton. Within days of default, Hilton sent Defendants payment demands and notices of default; however, Defendants have refused to reimburse Hilton for nearly two years. Answer ¶¶ 45, 49, 53, 71, 84, 98, 114.

Hilton brought this action to require Defendants to comply with their unambiguous contractual obligations to reimburse Hilton for its purchase of the Mezzanine Loan. Compl. ¶¶ 1–6. Defendants' answer admitted the core facts that entitle Hilton to judgment, including that they have failed to reimburse Hilton, Answer ¶¶ 45, 49, 53, 71, 84, 98, 114, and that each Reimbursement Contract was supported by consideration, *id.* ¶¶ 66, 79, 92, 106.

Defendants also pleaded fourteen boilerplate affirmative defenses, without providing any meaningful factual allegations to support them. *Id.* ¶¶ 121–134. During meet and confers on discovery issues, Defendants have explained that, pursuant to their affirmative defenses, they are seeking discovery into "post-default and post-foreclosure communications concerning valuation, disposition, restructuring, refinancing, or sale of the Mezzanine Loan." *See* Ex. 6 at 1. Defendants intend to delve into negotiations involving Hilton and Hirbod regarding the Third-Party Refinancing. Before undertaking those negotiations, Hilton and Defendants executed a contract, the "Pre-Negotiation Agreement," which expressly provides that "all of the Negotiations" on the Third-Party Refinancing "including, without limitation, all correspondence and documents relating to or exchanged in connection with the Negotiations, [1] shall be protected and [2] shall not be admissible as evidence or [3] otherwise referred to by any Party on any issue that is or may be before any court." Ex. 5 at 3 (§ 1).

4

## II.    Defendants Notice Depositions of Four Hilton Executives, Including Hilton's CFO.

On February 3, 2026, the Court entered an expeditious case schedule given the discrete issues presented in this action to enforce clear and unambiguous contracts. *See* Dkt. No. 33.  That schedule required completing discovery by June 12, 2026.  The parties have worked diligently to comply with that deadline, and Hilton has produced over 50,000 pages of materials in discovery.

On May 13, Defendants noticed depositions for four senior Hilton executives:  (1) John Shults, Vice President and Senior Counsel for Development; (2) Charlie Ruehr, Vice President of Corporate Finance and Investor Relations; (3) Greg Hartmann, Senior Vice President of Luxury and Mixed Used Development; and (4) Kevin Jacobs, Chief Financial Officer ("CFO").  Ex. 7 (Mr. Jacobs's Deposition Notice).  Mr. Jacobs is one of Hilton's senior-most executives, and he leads the company's finance, real estate, and corporate strategy functions globally.  Defendants noticed the deposition of Mr. Jacobs even though Mr. Jacobs is *not* identified in either party's initial disclosures, was *not* identified as a document custodian, and is included on less than 275 documents produced in the case to date (all of which contain other individuals Defendants have noticed for deposition).

On May 21, 2026, Hilton met and conferred with Defendants regarding Defendants' deposition notices.  Defendants offered no justification for deposing Mr. Jacobs other than his role in Third-Party Refinancing negotiations between Hilton, Hirbod, and potential third-party lenders in 2025.

### LEGAL STANDARD

"Federal Rule of Civil Procedure 26(c)(1) provides that a court may, for good cause, 'issue an order to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense,' by forbidding certain discovery." *Turner v. Amazon.com Servs. LLC*, No. 1:24-cv-01965 (LMB/WBP), 2025 WL 1748683, at *2 (E.D. Va. June 24, 2025).  "Good cause to issue a

protective order will exist if the party seeking the protective order demonstrates that specific prejudice or harm will occur if a protective order is not granted." *Id.*

Under the apex doctrine, this Court has barred the deposition of a "high ranking official or corporate executive" who lacks "any unique, special, or relevant knowledge of the facts at issue." *Id.* at \*4. "The purpose of the apex doctrine is to protect high-ranking officials from discovery abuses when they have 'no particular direct knowledge of the facts pertaining to the lawsuit.'" *Intelligent Verification Sys., LLC v. Microsoft Corp.*, No. 2:12cv525, 2014 WL 12544827, at \*2 (E.D. Va. Jan. 9, 2014) (quoting *Wal–Mart Stores, Inc. v. Vidalakis*, No. 5:07–MC-00039-RTD, 2007 WL 4591569, at \* 1 (W.D. Ark. Dec. 28, 2007)). This doctrine "is an aid to ensure 'that the liberal rules of procedure for depositions are used only for their intended purpose and not as a litigation tactic to create undue leverage by harassing the opposition or inflating its discovery costs.'" *Id.* at \*2 (quoting *Performance Sales & Mktg. LLC v. Lowe's Cos.,* No. 5:07–cv–00140-RLV, 2012 WL 4061680, at \*3 (W.D.N.C. Sep. 14, 2012)).

## ARGUMENT

Good cause supports issuing a protective order to preclude Defendants' deposition of Hilton's CFO Mr. Jacobs for two independent reasons. First, Defendants' purported basis for deposing Mr. Jacobs is his alleged role in the Third-Party Refinancing. But Defendants contractually agreed in the Pre-Negotiation Agreement that these refinancing negotiations would be "protected," "shall not be admissible," and shall not be "otherwise referred to by any Party on any issue that is or may be before any court." Ex. 5 at 3 (§ 1). The Pre-Negotiation Agreement alone justifies precluding Mr. Jacobs's deposition as these issues by agreement cannot be "referred to" in this Court. *Id.* Second, Defendants have not and cannot identify any "unique, special, or relevant" knowledge Mr. Jacobs has on claims and defenses in this action. Defendants also can

6

receive any relevant information through less intrusive methods of discovery—including through depositions of other Hilton executives.

**I.      The Pre-Negotiation Agreement Forecloses Defendants' Attempt to Depose Mr. Jacobs on the Refinancing Negotiations.**

Defendants intend to depose Mr. Jacobs on refinancing negotiations between Hilton and Hirbod regarding the Third-Party Refinancing.  But Hilton and each Defendant executed a Pre-Negotiation Agreement.  *See* Ex. 5.  Section 1 of the Pre-Negotiation Agreement is clear and unambiguous:  "***[A]ll of the Negotiations, including, without limitation, all correspondence and documents*** relating to or exchanged in connection with the Negotiations, ***shall be protected and shall not be admissible as evidence or otherwise referred to by any Party on any issue that is or may be before any court*** or administrative body or in any other proceeding or hearing, including, but not limited to, under Rule 408 of the Federal Rules of Evidence."  Ex. 5 at 3 (§ 1) (emphasis added).  The Pre-Negotiation Agreement is thus straightforward: "[A]ll of the Negotiations" on refinancing the Third-Party Mortgage Loan "shall be protected," "shall not be admissible as evidence," and shall not "otherwise [be] referred to by any Party" on any issue that "may be" before "any court."  *Id.* Each Defendant is a "Party" to the Pre-Negotiation Agreement.  Ex. 5. Defendants' attempt to depose Mr. Jacobs about refinancing negotiations on the Third-Party Mortgage Loan squarely violates Defendants' contractual obligations in the Pre-Negotiation Agreement.

The Pre-Negotiation Agreement thus demonstrates that there is "good cause" to prevent Defendants from deposing Mr. Jacobs on the refinancing negotiations.  Good cause exists when "specific prejudice or harm will occur if a protective order is not granted."  *Turner*, 2025 WL 1748683, at \*2.  Hilton agreed to engage in refinancing negotiations with Hirbod in reliance on the Pre-Negotiation Agreement's unambiguous statement that "all of the [n]egotiations" would

be "protected," "not [] admissible," and not "referred to" on any issue that "may be" before "any court." Ex. 5 at 3 (§ 1). Deposing Mr. Jacobs—one of Hilton's most senior executives—on the refinancing negotiations would thus cause "specific prejudice" to Hilton by permitting Defendants to trample the contractual protections they afforded to Hilton in the Pre-Negotiation Agreement.

## II.    Good Cause Supports Precluding Mr. Jacobs's Deposition Because He Lacks any Unique or Non-Duplicative Knowledge.

Defendants do not and cannot dispute that Mr. Jacobs is a senior executive—he is Hilton's Chief Financial Officer, and he oversees the company's global finance, real estate, and corporate strategy functions. When "seeking to depose a [] high-ranking ('apex') executive," a party "must show: '(1) the executive has unique or special knowledge of the facts at issue and (2) other less burdensome avenues for obtaining the information sought have been exhausted.'" *Intelligent Verification Sys.*, 2014 WL 12544827, at *2 (quoting *Wal–Mart Stores, Inc.*, 2007 WL 4591569, at * 1). Neither requirement is met here.

First, Defendants have not and cannot demonstrate that Mr. Jacobs has "unique or special knowledge of the facts at issue" in this case. *Id.* (quoting *Wal–Mart Stores, Inc.*, 2007 WL 4591569, at * 1). This is a straightforward breach of contract action based on Defendants' violation of unambiguous, "absolute," and "unconditional" loan guarantees in the Reimbursement Contracts. Mr. Jacobs is not a signatory to the Reimbursement Contracts, did not personally negotiate the Reimbursement Contracts, and did not have day-to-day involvement in the administration of the Reimbursement Contracts. No documents produced in this case involve direct communications between Mr. Jacobs and any Defendant. This is precisely why neither party identified Mr. Jacobs in their initial disclosures or as a document custodian during their negotiations on the original Requests for Production in this action. Mr. Jacobs was also not directly

involved in refinancing negotiations between Hilton and Hirbod regarding the Third-Party Refinancing.

For these reasons, Mr. Jacobs is a quintessential example of a "very high corporate officer unlikely to have personal familiarity with the facts of the case" for whom the apex doctrine applies. 8A Wright & Miller's, *Federal Practice and Procedure* § 2037 (3d ed. 2026).  Courts have issued protective orders in similar situations.  *See, e.g.*, *Celerity, Inc. v. Ultra Clean Holding, Inc.*, No. C 05–4374 MMC (JL), 2007 WL 205067, at *5 (N.D. Cal. Jan. 25, 2007) (issuing a protective order under the apex doctrine when there was "no indication that" an executive possessed "firsthand and non-repetitive knowledge regarding issues relevant to this lawsuit").

Second, Defendants have not and cannot demonstrate that "other less burdensome avenues for obtaining the information sought have been exhausted.'" *Intelligent Verification Sys.*, 2014 WL 12544827, at *2.  Even though this is a straightforward breach of contract dispute that turns on the clear and unambiguous language of loan guarantees, Defendants have noticed depositions for three senior Hilton executives other than Mr. Jacobs.  Hilton does not plan to seek relief from those depositions.  Defendants' failure to "exhaust[] other less intrusive methods of discovery"— including the depositions of other Hilton executives—further demonstrates that good cause exists to preclude Mr. Jacobs's deposition.  *See, e.g.*, *In re Google Litig.*, No. C 08-03172 RMW (PSG), 2011 WL 4985279, at *2 (N.D. Cal. Oct. 19, 2011).

## CONCLUSION

Defendants' attempt to depose Mr. Jacobs is a transparent "litigation tactic to create undue leverage by harassing the opposition." *Intelligent Verification Sys.*, 2014 WL 12544827, at *2. Defendants seek to depose Mr. Jacobs on refinancing negotiations between Hilton and Hirbod regarding the Third-Party Refinancing—even though the Pre-Negotiation Agreement executed by all parties squarely prohibits seeking Mr. Jacobs's testimony on that topic.  Mr. Jacobs also lacks

9

any unique, special, or non-duplicative knowledge that justifies Defendants' demand for his deposition.  The Court should issue a protective order that bars Defendants from deposing Mr. Jacobs.

Dated: May 22, 2026

Respectfully submitted,

By: /s/ *Craig C. Reilly*

Craig C. Reilly
VSB # 20942
429 N. St. Asaph Street
Alexandria, VA 22314
Telephone:  (703) 549-5354
Fax:  (703) 549-5355
Email:  craig.reilly@ccreillylaw.com

Andrew S. Tulumello (*pro hac vice forthcoming*)
Chantale Fiebig (*pro hac vice forthcoming*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Telephone:  (202) 682-7000
Facsimile:  (202) 857-0940
Email:  drew.tulumello@weil.com
Email:  chantale.fiebig@weil.com

*Counsel for Plaintiff*
*Hilton Worldwide Holdings Inc.*

10