# Exhibit 5

**HILTON WORLDWIDE HOLDINGS INC.**
7930 Jones Branch Drive
McLean, VA 22102

June 18, 2024

FMT SJ HOLDINGS LLC
c/o Eagle Canyon Capital, LLC
3223 Crow Canyon Place, Suite 300
San Ramon, California 94583
Attn: Legal Department

EAGLE CANYON HOLDINGS, LLC
c/o Eagle Canyon Capital, LLC
3223 Crow Canyon Place, Suite 300
San Ramon, California 94583
Attn: Legal Department

RDNWD LLC,
c/o Eagle Canyon Capital, LLC
3223 Crow Canyon Place, Suite 300
San Ramon, California 94583
Attn: Legal Department

Sam Hirbod
c/o Eagle Canyon Capital, LLC
3223 Crow Canyon Place, Suite 300
San Ramon, California 94583
Attn: Legal Department

Re:   $25,000,000.00 mezzanine loan (the "*Loan*") made by JPMorgan Chase Bank, National Association (with its successors and assign, the "*Lender*"), to RDNWD LLC, a Delaware limited liability company, (the "*Borrower*"), pursuant to, *inter alia*, that certain Mezzanine Loan Agreement dated as of November 8, 2021, between Borrower and Lender as amended by that certain First Omnibus Amendment to and Reaffirmation of Mezzanine Loan Documents, dated as of February 9, 2023, that certain Second Omnibus Amendment to and Reaffirmation of Mezzanine Loan Documents, dated as of June 9, 2023 and that certain Third Omnibus Amendment to and Reaffirmation of Mezzanine Loan Documents, dated as of July 9, 2023, which such amendment increased the principal balance of the Loan (as the same has been further modified and amended, from time to time, collectively, the "*Loan Agreement*").  All capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Loan Agreement or Reimbursement Agreement (as defined herein), as applicable.

Ladies and Gentlemen:

The Loan is (A) secured by, among other things, that certain Mezzanine Pledge and Security Agreement of all of Borrower's interest in SC SJ Holdings LLC, a Delaware limited

liability company ("*Lessor*") dated as of November 8, 2021, made by Borrower in favor of Lender (as amended, assigned or otherwise modified from time to time, collectively, the "*Lessor Pledge*"), and that certain Mezzanine Pledge and Security Agreement of all of Borrower's interest in Nex SJ LLC, a Delaware limited liability company ("*Lessee*") dated as of November 8, 2021, made by Borrower in favor of Lender (as amended, assigned or otherwise modified from time to time, collectively, the "*Lessee Pledge*", together with the Lessor Pledge, the "*Security Instrument*"), (B) evidenced by that certain Mezzanine Promissory Note, dated as of November 8, 2021, in the stated principal amount of $25,000,000.00 (as amended, assigned or otherwise modified from time to time, the "*Note*"), in favor of Lender (C) guaranteed by that certain Mezzanine Guaranty of Recourse Obligations (Unsecured) dated as of November 8, 2021 (the "*Mezzanine Recourse Guaranty*"), made by Sam Hirbod ("*Hirbod Guarantor*") and Eagle Canyon Holdings, LLC, a Delaware limited liability company ("*ECH Guarantor*", together with Hirbod Guarantor, "*Guarantor*"), and (D) further guaranteed by that certain Guaranty of Payment and Performance dated as of November 8, 2021, made by Hilton Worldwide Holdings, Inc., a Delaware corporation ("*Hilton*") (as amended, assigned or otherwise modified from time to time, the "*Hilton Guaranty*"). Pursuant to the Hilton Guaranty, Hilton, may, at its option, acquire the Loan (the "*Loan Purchase*"). Pursuant to that certain Reimbursement Agreement ("*Reimbursement Agreement*") dated as of November 8, 2021 between Hilton and FMT SJ Holdings LLC, a Delaware limited liability, and sole owner of Borrower ("*Obligor*", together with Lessor, Lessee, Obligor, Guarantor and Borrower, Mortgage Borrower and each of their respective successors and assigns, the "*Borrower Parties*"), Obligor has agreed that if Hilton completes a Loan Purchase, Obligor will fully and promptly reimburse Hilton and the Hilton Parties (as defined in the Reimbursement Agreement) for all Reimbursement Amounts (as defined in the Reimbursement Agreement). Performance under the Reimbursement Agreement and payment of the Reimbursement Amounts have been guaranteed, to the extent set forth therein, in that certain (i) Springing Guaranty, dated as of November 8, 2021, by Hirbod Guarantor, in favor of Hilton (as amended, assigned or otherwise modified from time to time, the "*Reimbursement Springing Guaranty*"), (ii) Guaranty of Reimbursement Agreement Obligations, dated as of November 8, 2021, by ECH Guarantor, in favor of Hilton (as amended, assigned or otherwise modified from time to time, the "*Reimbursement Obligations Guaranty*"; together with the Reimbursement Springing Guaranty, the "*Reimbursement Guaranties*"). The Reimbursement Agreement, together with the Reimbursement Guaranties, Security Instrument, the Note, the Loan Agreement and all other documents evidencing or securing the Loan, and/or evidencing or securing Obligor's obligation under the Reimbursement Agreement (but excluding for the avoidance of doubt, the Hilton Guaranty), as amended, assigned or otherwise modified from time to time, individually and collectively, shall be referred to herein as the "*Loan and Reimbursement Documents*". The terms, covenants, conditions and provisions which are applicable as of the date of this letter agreement to the Loan are set forth in the Loan and Reimbursement Documents. The Borrower Parties and Hilton are sometimes referred to in this letter agreement individually as a "*Party*", and collectively, as the "*Parties*".

In consideration of the mutual promises and covenants contained herein, for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by each of the Parties, and intending to be legally bound, the Parties hereby covenant and agree as follows:

1.     <u>Negotiations</u>.  The Parties have commenced and may continue to engage in (without liability for failing to do so), discussions, correspondence, communications and

negotiations concerning the obligations of Borrower under the Loan and Reimbursement Documents and other issues relating to the Loan and the Reimbursement Agreement and Hilton's rights and remedies thereunder, including, the rights and remedies vested in Hilton as lender under the Loan following a Loan Purchase by Hilton or any Hilton Party (individually and collectively, whether in the past, present or future, the "***Negotiations***"). The Parties agree that the Negotiations (including with respect to the Loan, whether Hilton completes a Loan Purchase or not), are subject to the terms of this letter agreement; the Negotiations, and all correspondence or drafts of documents relating to or exchanged in connection with the Negotiations, shall be made with a view towards compromise and settlement; and all of the Negotiations, including, without limitation, all correspondence and documents relating to or exchanged in connection with the Negotiations, shall be protected and shall not be admissible as evidence or otherwise referred to by any Party on any issue that is or may be before any court or administrative body or in any other proceeding or hearing, including, but not limited to, under Rule 408 of the Federal Rules of Evidence, Rule 4547 of the New York CPLR, or any other applicable law, rule or regulation, provided that this letter agreement may be introduced by Hilton in any such proceeding in connection with any claim that any Borrower Party is in breach of this letter agreement or by Hilton, for purposes of establishing any defense in any action brought by Borrower, Guarantor (whether in the relation to the Mezzanine Recourse Guaranty or in relation to the Reimbursement Guaranties), Obligor, Lessor, or Lessee or their respective affiliates. Borrower Parties acknowledge and agree that the Negotiations are confidential and their existence and substance shall not be disclosed to any third party without the prior written consent of Hilton. The Borrower Parties hereby acknowledge and agree, that, with respect to the Loan, this letter agreement is meant to cover any Negotiations and Communications (defined below) surrounding Hilton's or a Hilton Parties' prospective ownership (and following a Loan Purchase, Hilton's or any Hilton Parties' actual ownership) of the Loan and nothing herein shall obligate Hilton or any Hilton Party to complete any Loan Purchase.

2.  <u>Only Signed Written Agreements</u>. The Parties' respective obligations to one another shall be only as set forth in written agreements duly signed and executed by all Parties which are to be bound thereby in accordance with the terms and conditions of this letter agreement, including, but not limited to, this paragraph 2. The Negotiations, including those that occurred prior to the date hereof, may be lengthy and complex. Notwithstanding that the Parties may reach one or more oral understandings or agreements, or understandings or agreements via e-mail, on one or more issues which the Parties are discussing or trying to resolve, no Party shall be bound by or may rely on any understanding, representation, statement, conduct, action, inaction, oral agreement or e-mail correspondence of any kind ("***Communications***"), and no rights, claims, obligations or liabilities of any kind, either express or implied (including, without limitation, any waiver of any right or remedy), shall arise or exist in favor of or be binding upon any Party, or any other person, unless and until such understanding or agreement is memorialized in an independent writing that contains an actual handwritten or stamped signature of an authorized representative of all Parties to be charged thereby and such agreement is duly delivered by all such Parties. For the avoidance of doubt, in no event shall e-mail correspondence serve as a written agreement (regardless of whether such email(s) or other forms of electronic communication purport to do so). Communications shall not include any action, communication (including emails or other forms of electronic communication) or statements made by Hilton or any Hilton Parties in connection with Hilton's enforcement of Hilton's rights and remedies under the Loan and Reimbursement Documents, this letter agreement or in law or equity. Partial performance of any obligation by any of the Borrower Parties shall not under any circumstance create any obligation on the part of Hilton

or any Hilton Party unless expressly set forth in a definitive agreement executed in accordance with the terms and conditions of this letter agreement including, but not limited to, this paragraph 2. The Borrower Parties hereby acknowledge and agree, that as of the date hereof, neither Hilton nor any Hilton Party is the owner or holder of all or any portion of the Loan, and without limiting Hilton's rights pursuant to Section 6(b) of the Reimbursement Agreement, neither Hilton nor any Hilton Party, prior to a Loan Purchase, has any authority to bind the existing owner and holder of the Note to any definitive written agreement with respect to the Loan.

3.    Loan and Reimbursement Documents Remain in Force.  Notwithstanding any other provision of this letter agreement or any claim to the contrary, the Loan and Reimbursement Documents are and shall remain in full force and effect and unmodified, enforceable in accordance with their terms, unless and until amended or modified by a definitive written agreement executed by the Borrower Parties, and Hilton with respect to the Reimbursement Agreement, Reimbursement Guaranties and related documents and following a Loan Purchase, with respect to the Loan Agreement, Mezzanine Recourse Guaranty, Note, Security Instrument and related loan documents, in each case, in accordance with the terms and conditions of this letter agreement.  The Borrower Parties acknowledge that as of the date hereof, there are no offsets, claims, counterclaims or defenses of any nature whatsoever, whether based in contract, tort, equity or otherwise, with respect to the Loan, the Reimbursement Agreement or their respective obligations under the Loan and Reimbursement Documents, or against Lender and/or Hilton or any servicer acting on behalf of Lender and/or Hilton with respect to the Loan or the Reimbursement Agreement.  Furthermore, each of Hirbod Guarantor and ECH Guarantor hereby ratifies and confirms their respective joint and several obligations under the Recourse Guaranty, Mezzanine Guaranty of Completion, Mezzanine Interest and Carry Guaranty (Unsecured), Environmental Indemnity and Reimbursement Guaranties.

4.    No Waiver of Rights.  Except to the extent expressly set forth in a written agreement signed by the Parties herein, this letter agreement, the Negotiations, and any other actions taken or statements made before or after the date of this letter agreement in connection with the Negotiations, shall not constitute or evidence waiver, estoppel, release, modification or limitation of, forbearance from, or an agreement by Hilton or any Hilton Parties to delay the exercise of, (i) Hilton's rights or remedies or default by the applicable Borrower Parties, under or concerning the Reimbursement Agreement, or Reimbursement Guaranties or related documents, (ii) from and after the consummation of a Loan Purchase, Hilton's rights or remedies or default or Event of Default by the Borrower Parties, under or concerning the Loan or the Loan and Reimbursement Documents, or of (iii) any notice that may be given or action that may be taken thereunder or with respect thereto (including, without limitation, any notice or action taken as the result of the occurrence of a Default or an Event of Default), including whether delivered or taken by the Lender existing as of the date hereof or delivered or taken by Hilton following the completion of a Loan Purchase.  This letter agreement is delivered without prejudice to Hilton or any Hilton Party, and Hilton's and any Hilton Party's right to collect all sums and to enforce all rights and remedies now or hereafter accruing under the Loan and Reimbursement Documents.

5.    Waiver and Release.  Notwithstanding anything to the contrary contained herein or in any of the Loan and Reimbursement Documents, in consideration of the (a) execution and delivery of this letter agreement, (b) the delivery and execution of all documents and instruments potentially contemplated hereby and (c) the Communications and the Negotiations,

the Borrower Parties, on behalf of themselves and their respective successors and assigns, hereby fully, forever and irrevocably release, discharge and acquit Released Parties (as defined below) of and from any and all rights, claims, demands, obligations, liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why by reason of what facts, whether heretofore or now existing or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length (collectively, a "*claim*" or the "*claims*") that in any way arise from the Loan (including, with respect to any actions or inactions taken by the existing Lender, whether in consultation with Hilton or any Hilton Party or not or of any actions or inactions taken by Hilton or any Hilton Party following a Loan Purchase) or the Reimbursement Agreement, or the administration thereof, the applicable Loan and Reimbursement Documents, as well as any action or inaction of the Released Parties or any of them with respect to the Loan (to the extent Hilton completes a Loan Purchase) or the administration thereof; provided, however, that the foregoing release shall not apply to any claims that first arise after the date hereof or that relate to this letter agreement.  As used herein, the term "*Released Parties*" means Hilton and all Hilton Parties and Lender and their past and present affiliates and participants, and their respective past and present constituent members, partners, participants, officers, directors, servicers, agents, attorneys (including its external counsel), accountants, and employees of each and all of the foregoing entities, and their respective successors, heirs and assigns.  The Borrower Parties acknowledge and agree that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses and expenses which are presently unknown, unanticipated and unsuspected for the period prior to the date hereof, and the Borrower Parties further agree, represent and warrant that the waivers and releases herein have been negotiated and agreed upon in light of that realization and that the Borrower Parties nevertheless hereby intend to release, discharge and acquit the Released Parties from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses and expenses.

6.    No Obligation To Negotiate.  The Parties acknowledge and agree that, this letter agreement notwithstanding, no Party has any obligation whatsoever to commence in or continue the Negotiations, or discuss, negotiate or agree to any prospective modification, amendment or restructuring of the Loan (following the completion of a Loan Purchase), the Reimbursement Agreement or the applicable Loan and Reimbursement Documents, or to forbear from exercising its rights and remedies under such documents, including with respect to the Loan, to the extent Hilton completes a Loan Purchase.  Any Party, in its sole and absolute discretion, may terminate the Negotiations, without prior notice, at any time and for any reason, upon written notice (including by e-mail) to the other Party.  The Borrower Parties further expressly acknowledge and agree that neither Hilton nor any Hilton Party has any obligation whatsoever to agree, to the extent Hilton or any Hilton Party completes a Loan Purchase to any modification of the Loan or Reimbursement Documents unless, in each case, agreed upon in accordance with the provisions of this letter agreement, and shall be free in all events and under all circumstances to make any and all decisions with respect to the Loan (including, any decision made in consultation with the existing Lender prior to any Loan Purchase), the Reimbursement Agreement and the Loan

and Reimbursement Documents, and the respective terms, covenants, conditions and provisions pertaining thereto, as Hilton shall deem to be appropriate in the exercise of its sole and absolute discretion.

7.    Survival.  The provisions of this letter agreement shall survive any termination of the Negotiations.

8.    Authorized Representatives.  Hilton shall be represented by such officers, employees, representatives and attorneys whom Hilton may from time-to-time direct to negotiate with the Borrower Parties and any action taken by such officers, employees, representatives and attorneys or servicers of the Reimbursement Agreement shall be subject to the terms of this letter Agreement as if such actions were taken by Hilton.  No agreement concerning the Loan, the Reimbursement Agreement or the Loan and Reimbursement Documents shall be binding upon Hilton unless and until the same has been approved by the investment committee of Hilton and embodied in a written agreement executed by the Borrower Parties and Hilton in accordance with the terms and conditions of this letter agreement, including, but not limited to, paragraph 2.  The Borrower Parties shall be represented by such officers, employees, representatives, attorneys and other professionals which the Borrower Parties may from time-to-time direct to negotiate with Hilton.

9.    Waiver of Trial by Jury. THE PARTIES HERETO HEREBY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, THE RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER IN CONTRACT, TORT OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THIS LETTER AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

10.    Fees and Expenses.  Borrower Parties shall pay, as and when billed by Hilton, all fees, costs and expenses (including, without limitation, Hilton's attorneys' fees and expenses, appraisal fees, engineering fees and environmental fees) paid or incurred by Hilton and any Hilton Party in connection with the negotiation of this letter agreement, or in connection with the Negotiations and other actions contemplated under this letter agreement.

11.    Voluntary Agreement.  The Borrower Parties represent and warrant to Hilton that the Borrower Parties are represented by experienced legal counsel of their choice, that they have consulted with such counsel regarding this letter agreement, that they are fully aware of the terms and provisions contained herein and of their effect, and that they have knowingly, voluntarily and without coercion or duress of any kind entered into this letter agreement.  The Parties agree that the rule of construction that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this letter agreement and that each Party is deemed to have participated equally in the drafting of each and every provision of this letter agreement.

12.    Inducement.  The Parties understand that Hilton would not enter into the Negotiations concerning the prospective actions regarding the Loan and/or the Reimbursement Agreement without the execution and delivery of this letter agreement which sets forth the nature of, and the terms governing, the Negotiations.

13.     Partial Payments.  The Borrower Parties acknowledge that Hilton, at any time or from time to time, may accept or reject any partial payments of the obligations of Obligor, and/or Guarantor to Hilton which are tendered by the Borrower Parties or any other person or entity in connection the Reimbursement Agreement and from and after a Loan Purchase, from the Borrower Parties or any other person with respect to the obligations of Borrower and/or Guarantor, with respect to the Loan.  The acceptance of any such partial payments by Hilton shall not (i) constitute any agreement or commitment by Hilton to amend or modify the obligations of the Borrower Parties under the Loan and Reimbursement Documents, (ii) constitute any agreement by Hilton to continue to accept such partial payments, (iii) constitute any course of conduct by Hilton, (iv) reinstate the Loan or Reimbursement Agreement or cure any default or event of default under the Loan and Reimbursement Documents, (v) constitute any agreement or commitment by Hilton to forebear from the exercise of any of Hilton's rights or remedies pursuant to the Loan and Reimbursement Documents, (vi) otherwise waive or alter in any way any of Hilton's rights or remedies pursuant to the Loan and Reimbursement Documents, applicable law or otherwise, or (vii) constitute Hilton's agreement to, or acceptance of, any conditions set forth in connection with any such tendered payment and the Parties expressly agree that, notwithstanding any such purported conditions to any such tender, no such conditions shall be binding upon Hilton, notwithstanding Hilton's acceptance of such partial payment, unless at such time such conditions are expressly accepted and agreed to by Hilton in a written agreement executed by Hilton, and delivered to Borrower in connection with such partial payment.

14.     Party Relationship.  Other than with respect to the Management Agreement, the Parties acknowledge and agree that the relationship between Borrower Parties and Hilton arose entirely pursuant to and in accordance with the Loan and Reimbursement Documents.

15.     Other Opportunities.  Subject to paragraph 2 above, because the Negotiations may not produce a mutually acceptable final written agreement, Borrower, Obligor, Lessor, Lessee and Guarantor hereby acknowledge that it may be in their interests to pursue alternative proposed transactions or opportunities while Negotiations are ongoing (subject in all cases to the provisions of the Loan and Reimbursement Documents), and that any failure to do so is solely their decision.

16.     Discussions with Other Third Parties. The Borrower Parties hereby acknowledge that Hilton has had and continues to have the right to engage in discussions with any servicer of the Loan or parties who now hold, including the existing Lender, or in the future may acquire a direct or indirect interest in the Loan or the Collateral or the Property or the Mortgage Loan (including any prospective purchasers of the Loan and/or the Mortgage Loan and/or rights related to the Reimbursement Agreement), including the Mortgage Lender, or hold or in future may hold claims against the Collateral or the Property or Borrower or Lessor or Lessee or Guarantor or Obligor, and any broker or advisor to any of the foregoing.  The Borrower Parties acknowledge and agree that no such discussions (or any actions taken by such parties in connection with such discussions), whenever occurring or having occurred, shall result in any liability or obligation on the part of Hilton to the Borrower Parties (or any Affiliate thereof) or any claim on the part of any Borrower Party (or any Affiliate thereof or other party to any Loan Document). Any such discussions shall constitute Negotiations for all purposes under this letter agreement. The discussions may relate to, among other things, the Property, its operations, performance, capital structure and financing and/or any transaction or potential transaction relating to the

foregoing (including the marketing of the same to any prospective purchasers of the Loan and/or the Mortgage Loan and/or rights related to the Reimbursement Agreement). The Borrower Parties agree that, notwithstanding anything to the contrary contained in the Loan and Reimbursement Documents or any other agreement, Hilton Parties shall have the right to disclose any and all information, reports and agreements, whether prepared by Hilton (or the manager entity under the hotel management agreement), any of the Borrower Parties (or their affiliates) Lender, Mortgage Lender or any other Person on behalf of any of the foregoing, and whether proprietary, non-public or confidential (all of the foregoing, the "*Information*"), whether now or hereafter in the possession of Hilton or any Hilton Party with respect to the Property, its financing, and/or operation provided, however, that to the extent any such written Information is marked as confidential or proprietary, Hilton agrees that the same shall only be disclosed subject to a confidentiality agreement.

17.    Miscellaneous.  This letter agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns.  This letter agreement may not be modified, or amended, in whole or in part, except by an agreement in writing signed by the Parties in accordance with the terms and conditions of this letter agreement, including, but not limited to, paragraph 2.  This letter agreement shall be governed by and construed in accordance with New York law pursuant to § 5-1401 of the New York General Obligations Law, without giving effect to the principles of conflicts of law.  In the event of any dispute concerning or arising out of this letter agreement, whether in contract, tort or otherwise, the Parties (i) irrevocably and unconditionally submit to the exclusive jurisdiction and venue of the Federal and State courts located in the County of New York, New York, and (ii) agree that the prevailing party shall be entitled to recover all reasonable costs and attorneys' fees from the non-prevailing party or parties. Paragraph headings used in this letter agreement are for convenience only and shall not be used to interpret any term or provision of this letter agreement.  This letter agreement may be executed in one or more counterparts, each of which shall constitute an original and all of which taken together shall constitute one agreement.  Each person executing this letter agreement represents that such person has full authority and legal power to do so and bind the Party on whose behalf he or she has executed this letter agreement.  This letter agreement may be signed by any one or more of the Parties by .pdf or facsimile transmission, any such .pdf or facsimile transmission to be treated for all purposes as an original.

18.    Notices.  From the date hereof and until Hilton notifies otherwise, the Parties agree that in order for any notice or other written communication ("*Notice*") to be effective under the Reimbursement Agreement and/or Reimbursement Guaranties, Notice must be given as a .pdf attachment to an e-mail to each of the e-mail addresses set forth below for each Party and in accordance with this Section 18. Any Notice shall be deemed to have been received either (x) as of the date of the e-mail, if such e-mail was sent prior to 4 P.M. EST on a Business Day (and, in the case of any notice to Hilton, so long as such Notice was acknowledged as received by at least one representative of the Hilton set forth below), or (y) on the Business Day immediately succeeding the date of the e-mail, if such e-mail was sent on a day that is not a Business Day or after 4 P.M. EST on a Business Day (and, in the case of any Notice to Hilton, so long as such Notice was acknowledged as received by at least one representative of the Hilton set forth below). The e-mail addresses for purposes of delivering Notice pursuant to this Section 18 to the Parties are as follows:

If to Hilton:

|  | Charlie Ruehr: | Charlie.Ruehr@hilton.com |
|  | and |  |
|  | John Shults: | John.Shults@hilton.com |

And to:

|  | Greg Fennell: | Gregory.Fennell@dentons.com |
|  | and |  |
|  | Chris Lee: | Christopher.Lee@dentons.com |

If to the Borrower Parties:

|  | Sam Hirbod: | SHirbod@eaglecanyoncapital.com |

And to:

|  | Michael Roth: | MRoth@sheppardmullin.com |

[Signatures appear on the next page.]

Very truly yours,

**HILTON:**

HILTON WORLDWIDE HOLDINGS, INC.,
a Delaware corporation

By: _____
Name: Michael Hollman
Its: Authorized Signatory

**AGREED TO IN ALL RESPECTS**:

**BORROWER**:

RDNWD LLC, a Delaware limited liability company

    By: FMT SJ Holdings LLC, a Delaware limited liability company, it sole member

        By: Eagle Canyon Capital, LLC a Delaware limited liability company, its sole member

    By:_____
        Name: Sam Hirbod
        Title: President

**GUARANTOR**

EAGLE CANYON CAPITAL, LLC,
a Delaware limited liability company

By: _____
Name: Sam Hirbod
Title: President

_____
SAM HIRBOD, an individual resident of Miami-Dade County, Florida

**OBLIGOR**:

FMT SJ HOLDINGS LLC,
a Delaware limited liability company

By: _____
Name: Sam Hirbod
Its: President

[San Jose Hilton - Pre-Negotiation Agreement (Mezz Loan & Reimbursement Agreement)]